Marion R. SHAFFER, Plaintiff-Respondent,

v.

KANSAS CITY TRANSIT, INC., a Corporation, Defendant-Appellant.

No. 25415.

Kansas City Court of Appeals, Missouri.

Feb. 1, 1971.

Harold T. VanDyke, Edward W. Kriss, Linde, Thomson, VanDyke, Fairchild & Langworthy, Kansas City, for defendant-appellant.

James L. Crabtree, Law Offices Melvin L. Kodas, Kansas City, for plaintiff-respondent.

FLOYD L. SPERRY, Special Commissioner.

Plaintiff, a school teacher by profession, was a passenger on defendant's bus on December 27, 1966. The bus stopped and plaintiff stepped down and off, holding onto a vertical bar inside the bus, with her left hand. The door closed on her left arm, between the shoulder and the elbow, after her feet were on the pavement. The door opened and she recovered her arm. She sued for personal injuries received on this occasion and, from a verdict and judgment for $15,000.00 in her favor, defendant has appealed.

Defendant makes two contentions: one, that the verdict is so excessive as to indicate bias and prejudice, requiring a new trial, or so excessive as to be the result of a mistake, requiring remittitur; and, two, that the court erred in refusing defendant's Instruction 11, authorizing a finding that plaintiff was negligent in permitting her arm to remain inside the bus after she had alighted.

The day on which this accident occurred was snowy and there was an accumulation of snow on the streets in Kansas City. Plaintiff boarded the bus down town and rode it to Truman Road and Woodland, where it stopped at an angle with the curb, because of piled up snow, so that passengers disembarked at the rear, stepping into the street. There was a lady immediately ahead of plaintiff when the bus stopped and the rear door opened. When that lady cleared the door, plaintiff started down, stepping onto the street. There was a vertical bar inside the bus door, which she grasped with her left hand. She put one foot onto the pavement, and then placed

the other one down, holding onto the bar. About when her second foot came to the ground, but before she had released the bar, or taken her left arm down, the bus door closed on her arm between the shoulder and the elbow.

Mrs. Keatings, a passenger, stated that she was immediately behind plaintiff when plaintiff dismounted; that, after plaintiff "was on the ground, or as she was getting on the ground" the bus doors closed; that plaintiff's upper left arm was caught between the doors; that a passenger immediately behind witness "pulled the cord, so that the doors would open, the bus driver would open the doors * * *;" that the doors opened and plaintiff removed her arm; that witness then stepped down and off. The witness said that the doors remained closed "a short second" and opened; that plaintiff retrieved her arm; that the doors did not again close.

Plaintiff stated, at the trial, that she was thirty-eight years old; that she rode defendant's bus to the intersection of Truman Road and Woodland; that the bus stopped and the rear doors opened; that another lady stepped off, and plaintiff followed her; that, as she stepped down, she grasped a vertical bar in the bus with her left hand, in order to steady herself because the street was slippery from snow. She said, "* * * when my body cleared the door, almost simultaneously the door closed on my left arm, between my elbow and my shoulder;" that she jerked her arm while the door was closed; that she believed that it closed, then opened, and closed again, but was 'not certain that it closed a second time. She stated that her left arm, between the elbow and the shoulder, was bruised; that she was treated at St. Joseph Hospital, and by Dr. Reynolds at his office; that, at the date of trial, September, 1969, there was a swollen knot on her arm; that any fast movement of the arm, up or back, results in pain; that there has been no improvement since January, 1968; that she cannot move furniture in her home, or move movie equipment or

phonographs in her work as a school teacher; that she cannot lift heavy grocery bags; that her doctor charged her $7.-00 per office call and $10.00 for treatments for her arm; that she cannot operate a sweeper in her home; that her arm pains her while in bed; that she was examined by Dr. Pipkin at defendant's request. She stated that her total doctor and hospital bills were $796.25; $90.64 for medicines; that she lost wages at Woolf Brothers in the sum of $40.00, and school salary in the amount of $525.00; a total of $1451.89.

Dr. Reynolds, a member of the staff of St. Joseph Hospital, stated that he is plaintiff's family doctor; that on December 28, 1966, he saw and treated her; that she complained of swelling and tenderness of the left shoulder and arm; that her arm resisted movement on abduction; that no bones were involved; that the fibres of the deltoid muscle at the intersection with the humerus were torn; that she had suffered muscular damage with some ligaments involved; that he saw her in his office sixteen times between that date and February 5th, 1967, when she entered the hospital for treatment; that she was discharged February 11th; that he had seen her forty-one times between that date and September 9, 1969; that he had treated her condition, but that it has remained "fairly static"; that there is a "mechanical" impairment on abduction; that there is actually a block to movement; that there are calcium deposits at the point where the deltoid muscle inserts into the humerus, which blocks movement; that she has suffered a tendon "rip" at that point; that she is disabled from lifting, carrying, or doing anything requiring strenuous lifting with her left arm, that it will, sometimes, be painful when not being used; that this disability is directly due to injuries received in the accident of December 27, 1966; that her condition is permanent; that it may worsen because of developing arthritis; that she will, in the future, need frequent medication and medical care; that his charges, for services were $427.00; that his

charges, as well as hospital charges of $305.00, were reasonable; that there is an indentation on her upper left arm that should not be there but has been there since the accident. There was evidence tending to prove that a thirty-eight year old person has a life expectancy of a little more than thirty-two years.

Defendant's counsel, in his opening statement, said that defendant had no witness who saw plaintiff when she stepped off of the bus. Defendant offered no such witness, nor does it here contend that plaintiff failed to make a submissible case. However, defendant contends that the court erred in refusing to give its offered Instruction Number 11. This instruction, briefly, told the jury that:

"Your verdict must be for the defendant, whether or not defendant was negligent, if you believe:

First, plaintiff either:

allowed her arm to remain inside the bus, holding the handle, after she alighted from the bus, or

allowed her arm to remain between the doors after the doors closed and reopened; and

Second, plaintiff's conduct, in any one or more of the respects submitted in paragraph First, was negligent; and

"Third, such negligence of plaintiff directly caused or directly contributed to cause any damage plaintiff may have sustained."

■ There was no substantial evidence tending to prove that defendant *"allowed"* her arm to remain inside the bus after she alighted. Mrs. Keatings was the only eye witness (other than plaintiff) to the occurrence. She stated that the doors closed while plaintiff was alighting, and about when she had her feet on the ground. She also stated that, when the doors opened, plaintiff withdrew her arm from the bus. There is no evidence tending to prove that

plaintiff could have removed her arm before she did so. Mrs. Keatings stated that the doors closed but once. Plaintiff stated that, she believed, but that she was not certain, that the doors closed and opened and then again closed and opened; but she did say that she pulled on her arm while the doors were closed, and that she removed her arm after the door opened. There was no substantial evidence tending to prove that plaintiff was guilty of negligence in the respect claimed, and the court properly rejected the instruction.

■ Defendant also contends that the verdict is so excessive as to require reversal or remittitur. Plaintiff's evidence concerning her special damages, and also as to the nature, severity and duration of her injuries, stands uncontradicted by any evidence from any source.

In considering whether a verdict, after the trial court has sustained it, is excessive, an appellate court will consider the evidence which tends most strongly to support the verdict and will disregard evidence to the contrary. Sanders v. Illinois Central Railroad Co., en banc, 364 Mo. 1010, 270 S.W.2d 731, 738. Here there was no countervailing evidence.

Plaintiff's medical evidence was unequivocal and undisputed, to the effect that she had sustained serious and permanent injuries to the deltoid muscle and ligaments leading into the humerus, at the left shoulder; that calcium had formed at that point; that it is known by the medical profession as "green bone"; that this condition causes a blockage of movement of the left arm; that it can be very painful, requiring frequent medical treatment to relieve pain; that it may even be painful when at rest, as plaintiff stated that it was; that this condition would likely worsen by developing arthritis. It was shown by plaintiff's testimony that she is not capable of performing many of her household duties as well as some of her professional duties. She has suffered special damages of about $1400.00, and will re-

quire medical care and frequent medication during the remainder of her life, and she will suffer pain. The jury could have considered and estimated her future medical expenses over a period of thirty-two years, based on the frequency of treatments received by her between December 27, 1966, and September 9, 1969, from the facts in evidence. Determination of the amount of the verdict was primarily the concern of the jury. Stafford v. Fred Wolferman, Inc., Mo., 307 S.W.2d 468, 477–478.

In determining whether a verdict is excessive, due regard is given to the significant decline in the real value of the dollar, to the rule of reasonable uniformity of awards for similar injuries, and to the fact that the jury and the trial court are in a better position than the appellate court to measure an award of reasonable compensation. Burr v. Kansas City Public Service Co., Mo.App., 276 S.W.2d 120, 127.

Defendant calls our attention to Ciardullo v. Terminal R. R. Ass'n, Mo., 289 S.W. 2d 96, where a $15,000.00 verdict for injuries *somewhat* similar to those here, was recovered. The court ordered a remittitur of $3,000.00. That decision was rendered in 1956. It is a matter of common knowledge that the value of the dollar has materially declined since the 1957–1959 period. The decline has been, probably, in excess of 30%.

■ We hold that the verdict is not excessive so as to require reversal or remittitur.

Your Special Commissioner recommends that the judgment be affirmed.

PER CURIAM:

The foregoing opinion by FLOYD L. SPERRY, Special Commissioner, is hereby adopted as the opinion of the Court and the judgment is affirmed.

All concur.