Thomas E. METZGER,
Plaintiff-Appellant,

v.

Pamela SCHERMESSER, David Shiro,
and Daniel Conway,
Defendants-Respondents.

No. 48219.

Missouri Court of Appeals,
Eastern District,
Division One.

March 12, 1985.

Robert F. Ritter, St. Louis, for plaintiff-appellant.

Richard J. Mehan, Jr., St. Louis, for defendant-respondent Shiro.

Don B. Sommers, St. Louis, for defendant-respondent Conway.

GAERTNER, Judge.

Plaintiff, Thomas E. Metzger brought this action against defendants Pamela Schermesser, Daniel Conway and David Shiro for personal injuries Metzger suffered in an automobile collision. At the close of plaintiff's evidence the trial court sustained Conway and Shiro's motions for directed verdict. Metzger then settled his dispute with defendant Schermesser and appeals from the action of the trial court in sustaining the motions for directed verdict. We reverse and remand.

In reviewing a trial court's grant of a motion for directed verdict after the close of a plaintiff's evidence, we "consider the evidence in the light most favorable to the plaintiff with all reasonable inferences to be drawn therefrom." *Garrett v. Joseph Schlitz Brewing Company*, 631 S.W.2d 652, 654 (Mo.App.1982).

About 12:30 a.m. on October 30, 1976, plaintiff drove his automobile through the intersection of Lemay Ferry Road and Reavis Barracks Road. He heard the collision of vehicles driven by Conway and Shiro occur behind him.

Plaintiff adduced evidence from which a jury could have found the negligence of both drivers contributed to this intersection collision. Conway admitted he never saw Shiro's automobile before the accident. The evidence is susceptible, by mathematical computation of relative speeds and distances, of proving Shiro should have known of the danger in time to have avoided the collision. For the purposes of this appeal the defendants concede their negligence in causing the first collision may be assumed.

Upon hearing this collision, plaintiff stopped his car and went back to the scene of the accident to see if anyone was hurt or needed assistance. Plaintiff and a passenger in his car, Scott Dowd, then helped Conway, Shiro and their passengers out of the wrecked vehicles to the side of the road. The Shiro vehicle blocked both northbound lanes of traffic. The intersection was dimly lighted and a heavy rainstorm further impaired visibility. Metzger went back to the Shiro vehicle to turn on its emergency flasher lights. Pamela Schermesser, who was northbound on Lemay Ferry, drove her vehicle into the Shiro vehicle while Metzger was inside of it, thereby causing injury to Metzger.

■ It is axiomatic that the mere fact that injury follows negligence does not necessarily create liability. *Branstetter v. Gerdeman*, 364 Mo. 1230, 274 S.W.2d 240, 245 (1955). Plaintiff must also prove the negligent conduct amounted to a violation of some duty owed to him and that the conduct was an efficient and proximate cause of his injury. *Gass v. Knittig*, 396 S.W.2d 26, 28 (Mo.App.1965). Here, defendants argue that their assumed negligence in causing the first collision was neither a violation of any duty owed to plaintiff nor a proximate cause of his injuries.

■ While it is true that defendants owed no duty to plaintiff at the time of the first collision because plaintiff was not then endangered by their conduct, that fact alone does not relieve them of liability for his subsequent injuries. The foreseeability of rescue efforts brings the rescuer within the scope of the violated duty.

> Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperilled victim; it is a wrong also to his rescuer.

*Wagner v. International Ry. Co.*, 232 N.Y. 176, 133 N.E. 437 (1921). Not only is a wrong to the tortfeasor's victim a wrong to the victim's rescuer, but also a wrong which endangers only the tortfeasor himself is a wrong to the rescuer. *See Dodson v. Maddox*, 359 Mo. 742, 223 S.W.2d 434 (1949). Although Metzger and Dowd had escorted Conway, Shiro and their passengers to safety before Schermesser arrived on the scene, Metzger's action in attempting to turn on the emergency flashers of Shiro's automobile was still part of the rescue. Only the focus of the rescue had changed—from rescuing Conway, Shiro, et al. to preventing the perceived potential for harm to other motorists posed by the wreckage.

■ The more troublesome issue is that of the causal connection, in law, between the negligence of Conway-Shiro and the injuries sustained by plaintiff. "To be a legal cause of harm to another one's conduct must be a substantial factor in bringing about the harm. Restatement of Torts,

2nd, § 431...." *Ricketts v. Kansas City Stockyards Company of Maine,* 484 S.W.2d 216, 221–22 (Mo. banc 1972). Determination of substantiality and proximity of the causal relationship between negligence and injury is dependent upon the particular facts of each case and it is seldom that one decision controls another. *Price v. Seidler,* 408 S.W.2d 815, 820 (Mo. 1966); *Strake v. R.J. Reynolds Tobacco Co.,* 539 S.W.2d 715, 718 (Mo.App.1976). In discussing "proximate cause" or "legal cause", it has been said "[t]here is perhaps nothing in the entire field of law which has called forth more disagreement, or upon which the opinions are in such a welter of confusion." Prosser and Keeton on Torts, § 41 (5th Ed.1984).

■ Defendants do not contend their negligence in causing the first collision was not a cause of the second collision. Indeed, such an argument would be untenable for the second collision could not have occurred "but for" the first collision with its resultant blockage of the two northbound lanes of traffic. Rather, they argue that their negligence was not a *proximate* cause of plaintiff's injury. They contend plaintiff's injuries were caused by the intervening negligence of Schermesser and that whatever negligence they may have been guilty of was antecedent and remote. Defendants rely upon a sentence taken from our opinion in *Strake v. R.J. Reynolds Tobacco Co., supra;* " 'the proximate cause of an event is that which, in a natural and continuous sequence, unbroken by any new cause, produces the event without which the event would not have occurred.' " 539 S.W.2d at 718, *quoting King v. Ellis,* 359 S.W.2d 685, 688 (Mo.1962). We find the ensuing sentence of the *Strake* opinion equally relevant. "Generally, an efficient, intervening cause is a new and independent force which so interrupts the chain of events that it becomes the responsible, direct, proximate and immediate cause of the injury, but it may not consist merely of an act of concurring or contributing negligence."

In *Strake* a rear-end collision occurred on an icy street about 9 a.m. The drivers exited their respective cars and thereafter moved both vehicles in such a manner that the traffic lanes remained partially blocked. Other traffic continued to drive past the scene in safety. While the drivers were exchanging information, a third automobile slid into the first cars and caused plaintiff's injuries. This court held the negligence of the third driver to be an independent force rather than concurring or contributing negligence, thereby relieving the first rear-ender of responsibility.

The interruption of the chain of events and the break in the continuous sequence in *Strake* is shown by the fact that other drivers, in broad daylight, avoided the cars involved in the first accident. Those cars obviously did not present a continuing hazard. In this instant case, the opposite is demonstrated by the perceived need to turn on the emergency flasher lights because of the darkness and the weather conditions, and particularly by the fact the first car to come along after the original collision could not avoid striking the Shiro vehicle. The obstruction of both northbound lanes of a dimly illuminated intersection in a heavy rainstorm was not a mere circumstance, but constituted a continuing breach of the duty owed to oncoming motorists and to those who would seek to warn of the negligently created hazard. This breach would persist until warning lights were turned on or until conditions changed to alleviate the danger. Thus, the negligence of Schermesser did not constitute a break in the continuous sequence or an interruption of the chain of events, but was rather conduct which resulted in harm only by reason of its combination and concurrence with the earlier negligence.

In arguing that Schermesser's negligence was an intervening force relieving them of liability on account of their earlier negligence, Conway and Shiro stress the estimated 5 to 10 minute lapse between the first and the second collision. Although the word "intervention" implies a temporal succession of events, time alone is not the criterion by which the legal import of an

intervening act is measured. Rather, the issue is whether or not the intervening act so supersedes the earlier conduct as to excuse responsibility for the consequences thereof. *See* Restatement of Torts, Second, § 440 to 453. Particularly appropriate to the instant case is § 447:

The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.

While all three of these alternatives are applicable to the facts of this case, subsection (c) is particularly appropriate. The normal consequence of the Conway-Shiro collision with its resultant obstruction of both northbound lanes of a dark street in a heavy rainstorm was that an oncoming car would run into the vehicles. Schermesser's conduct was not extraordinarily negligent. Here, again, the distinction between this case and *Strake* is evident. There, because other traffic had passed the original collision vehicles in safety, the negligence of the driver who failed to do so can be said to be extraordinary by comparison.

■ Especially in this era of comparative negligence and apportionment of relative fault, the respective degree of contribution of the negligence of multiple tortfeasors is generally a jury question. Where there is a question upon which reasonable minds may differ regarding the foreseeability of the subsequent negligence acting upon antecedent negligence it is proper to permit a jury to determine whether the antecedent negligence was totally superseded or was contributory, and, if so, in what degree.

Accordingly, the trial court erred in holding, as a matter of law, that a jury question did not exist with regard to the proximate causation of plaintiff's injuries by reason of the negligence of Conway and Shiro. The cause is reversed and remanded for a new trial as to those defendants.

PUDLOWSKI and KAROHL, JJ., concur.