**Melvin Dean BUCK, Plaintiff/Appellant,**

v.

**UNION ELECTRIC CO.,
Defendant/Respondent.**

No. 63612.

Missouri Court of Appeals,
Eastern District,
Division Two.

Oct. 18, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 21, 1994.

**432**

Michael A. Gross, St. Louis, for appellant.

James F. Waltz, Oliver, Oliver & Waltz, P.C., Cape Girardeau, for respondent.

PUDLOWSKI, Judge.

Melvin Dean Buck appeals from a judgment *non obstante veredicto.* In a negligence action, Buck sued Union Electric for injuries sustained in a car crash with an oncoming vehicle which had entered his lane due to the partial obstruction of the roadway by Missouri Utilities[1] and remained there until the collision. At trial, the jury rendered a verdict in favor of Buck. The trial court entered its judgment *non obstante veredicto* finding that Missouri Utilities' actions were not the proximate cause of Buck's injuries. We affirm.

On the morning of Friday, March 12, 1982, Missouri Utilities Company had a crew, comprised of Kelly Stroder and Curtis Coffey, working on Three Mile Road in Stoddard County. Three Mile Road is a two-lane open highway which runs north/south. It is approximately nineteen feet wide with no center dividing line and a very narrow shoulder. The particular stretch of Three Mile Road on which they were working was level for at least a quarter-mile to the north of the job site. To the south, the road went uphill and crested approximately two hundred and fifty to three hundred feet away.

On this particular morning, Stroder and Coffey were to clean up a previous job site and pack with blacktop a trench which the company had dug across the road two weeks earlier. In order to do so, the men would be using a backhoe on the east and west sides of the shoulder, at times partially blocking the northbound and southbound traffic lanes.

Stroder and Coffey arrived at the site at approximately 8:30 a.m. In addition to other tools, they were equipped with the backhoe, a flag, and two square "MEN WORKING" signs which are yellow with black letters and stand approximately three feet high. Prior to beginning their work, Stroder and Coffey, in order to warn traffic that they were working in the road, placed one of the "MEN WORKING" signs fifty feet to the north of the backhoe and the other at the crest of the hill, south of the backhoe.

Around 11:30 a.m., the two men believed that they had completed their work. Therefore, they removed the "MEN WORKING" signs from either side of the backhoe. After taking down the signs, Coffey decided to straighten up the work site by cleaning up some extra blacktop which they had left on the ground. In addition, he wanted to re-tamp one final time the new asphalt on the shoulder of the southbound lane by running it over with the wheel of the backhoe. After finishing the work, Stroder and Coffey planned to turn the backhoe around in the northbound lane and return to their crew headquarters. Stroder decided he should flag oncoming northbound traffic at the crest of the hill and, therefore, began walking to the crest of the hill.

That morning, JoAnn Richards left work at 11:30 a.m. with her friend Lavonia Ann Green for their lunch break. Richards had lived off Three Mile Road for two years and had traveled it on a number of occasions. She was driving her 1979 Buick Regal southbound on Three Mile Road as she approached the backhoe which was partially on the shoulder and partially in the southbound lane of traffic. She had an unobstructed view of the backhoe. As she passed the backhoe in the northbound lane, Richards maintained her speed of approximately thirty miles an hour. After passing the backhoe, Richards continued to travel up the hill in the northbound lane of traffic. As she approached the crest of the hill, Richards remained in the northbound lane. Richards, at no point prior to the accident, considered getting back into her own lane of traffic.

---

1. Missouri Utilities Company was the predecessor in interest to Union Electric Company.

Richards never saw Coffey in the southbound lane of traffic as he walked to the crest of the hill.

At the same moment, Melvin Dean Buck, a resident of Dexter, Missouri, was approaching the crest of the hill from the opposite direction. He was driving his 1981 Mazda GLC station wagon northbound in his own lane of traffic. The vehicle was traveling at approximately forty to forty-five miles per hour. He had his son, Dennis, and daughter, Gina with him. They were on their way to drop the son off at his girlfriend's house. Immediately after Buck crested the hill, Richards collided with Buck. At the time of the accident, Richards was still completely in the northbound traffic lane.

Buck was injured and was hospitalized for approximately two weeks following the accident. He later required additional surgery on the injured shoulder.

The case was tried and a jury returned a verdict in favor of Buck. Subsequently, the trial court entered a judgment *non obstante veredicto* holding that "the evidence does not support a finding that defendant's conduct, either in location of its backhoe or its failure to warn other vehicles was the proximate cause of the collision between plaintiff's vehicle and the vehicle operated by JoAnn Richards." Buck appeals that judgment.

■ The standard of review for a judgment *non obstante veredicto* is whether viewing the evidence in a light most favorable to Buck reasonable minds could differ as to Missouri Utilities' negligence. *Gregory v. Robinson*, 338 S.W.2d 88, 91 (Mo. banc 1960); *Smith v. R.B. Jones of St. Louis, Inc.*, 672 S.W.2d 185, 186 (Mo.App.E.D.1984); *Goodenough v. Deaconess Hospital*, 637 S.W.2d 123, 125 (Mo.App.E.D.1982); *Fordyce v. Montgomery*, 424 S.W.2d 746, 750 (Mo.App. 1968). Buck is entitled to the evidence and inferences favorable to the jury verdict and the evidence of Missouri Utilities must be disregarded except in so far as it supports the verdict. *Bayne v. Jenkins*, 593 S.W.2d 519, 521 (Mo.1980); *Gregory v. Robinson*,

338 S.W.2d at 91; *Cathey v. DeWeese*, 289 S.W.2d 51, 52 (Mo.1956).

■ It is apparent from the facts of this case that Richards would never have entered the northbound lane if Missouri Utilities had not been operating the backhoe, thereby obstructing part or all of the southbound lane. It is also apparent that Stroder was going to the crest of the hill in order to flag the northbound traffic. Assuming the aforementioned facts are true,[2] we find that its actions were not the proximate cause of the accident.

■ It is axiomatic that the mere fact that injury follows negligence does not necessarily create liability. Plaintiff must also prove the negligent conduct amounted to a violation of some duty owed to him and that the conduct was an efficient and proximate cause of his injury. *Metzger v. Schermesser*, 687 S.W.2d 671, 672 (Mo.App.E.D.1985).

■ In discussing "proximate cause" or "legal cause", it has been said "[t]here is perhaps nothing in the entire field of law which has called forth more disagreement, or upon which the opinions are in such a welter of confusion." *Metzger*, 687 S.W.2d at 674 (quoting Prosser and Keeton on Torts § 41 (5th ed. 1984)). Determination of substantiality and proximity of the causal relationship between negligence and injury is dependent upon the particular facts of each case and it is seldom that one decision controls another. *Georgescu v. K Mart*, 813 S.W.2d 298, 301 (Mo. banc 1991); *Krause v. U.S. Truck Co., Inc.*, 787 S.W.2d 708, 710 (Mo. banc 1990); *Metzger*, 687 S.W.2d at 673; *Price v. Seidler*, 408 S.W.2d 815, 820 (Mo. 1966); *Strake v. R.J. Reynolds Tobacco Co.*, 539 S.W.2d 715, 718 (Mo.App.1976). Therefore, we will scrutinize the facts of this case applying the relevant principles of law.

■ Missouri courts have adopted the Restatement (Second) of Torts, § 431 which states that "[t]o be a legal cause of harm to another one's conduct must be a substantial factor in bringing about the harm." *Metzger*, 687 S.W.2d at 672–73 (citing *Ricketts v. Kansas City Stock Yards Company of Maine*,

---

**2.** The plaintiff submitted Richard's deposition as part of his case and she stated she did not see

Stroder in the southbound lane.

484 S.W.2d 216, 221–22 (Mo. banc 1972)). The test is whether, after the accident, the injury appears to be the natural and probable consequence, unbroken by any new cause, of the act or omission of the defendant, without which the accident would not have occurred. *Krause*, 787 S.W.2d at 710; *Schaffer v. Bess*, 822 S.W.2d 871, 877 (Mo.App.1991); *Metzger*, 687 S.W.2d at 674; *Strake*, 539 S.W.2d at 718; *King v. Ellis*, 359 S.W.2d 685, 688 (Mo.1962).

■ If two or more persons are guilty of consecutive acts of negligence closely related in time, there is a question as to whether one initial act of negligence was a proximate cause of the injury or whether there was an efficient intervening cause. *Krause*, 787 S.W.2d at 710; *Schaffer*, 822 S.W.2d at 877. Applied to the case at bar, the issue is whether the negligence of Richards was an efficient, intervening cause which rendered the conduct of Missouri Utilities remote and no longer the "proximate cause" of the accident.

■ An efficient, intervening cause is a new and independent force which so interrupts the chain of events that it becomes the responsible, direct, proximate and immediate cause of the injury, but it may not consist of merely an act of concurring or contributing negligence. *Schaffer*, 822 S.W.2d at 877; *Metzger*, 687 S.W.2d at 674. *See also Strake*, 539 S.W.2d at 718. Thus, Richards' negligence cannot be merely contributory but must be the sole efficient "proximate cause" of Buck's injuries. The issue is whether or not the intervening act by Richards so supersedes the earlier conduct of Missouri Utilities as to excuse its responsibility thereof. *Metzger*, 687 S.W.2d at 674 (citing Restatement (Second) of Torts, §§ 440–453). Richards' actions clearly caused the accident. After passing the backhoe which was operating in the southbound lane without slowing down, Richards remained in the northbound lane as she approached the crest of the hill. At the time of the accident, the Richards' vehicle was further in the northbound lane, the wrong lane, than was the Buck vehicle. Richard's testimony in response to the following question was asked and answered: "Question: It never did occur to you to turn back to the right and get back in the south-bound lane of travel. Is that correct? Answer: Not to my knowledge. The only thing that I considered was to turn left. The instant I thought that, but I knew I couldn't do that." Richards never made any attempt to get back into her own lane. The intervening act of Richards was not entering the northbound lane but rather, while maintaining her rate of speed, failing to return to her own unobstructed lane of travel after passing the backhoe as she approached the crest of a hill.

There are many factors which determine if an intervening force or act is a superseding cause that insulates a defendant from liability. Particularly helpful in this inquiry is the Restatement (Second) of Torts, § 447 as cited in *Metzger*:

> The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if
>
> (a) the actor at the time of his negligent conduct should have realized that a third person might so act, or
>
> (b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or
>
> (c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.
>
> *Metzger*, 687 S.W.2d at 674.

All three of these subsections are instructive and pertinent.

■ Subsection (a) requires that, in order for Richards' driving to not be an efficient, intervening cause, Missouri Utilities had to realize that by diverting traffic into the northbound lane Richards would continue in the wrong lane a considerable distance, as she approached a dangerous condition, *i.e.*, the crest of the hill. It is not negligence to fail to anticipate that another will be negligent for one is entitled to assume and act upon the assumption that others will exercise

due care for their own safety, in the absence of notice to the contrary. *Taylor v. Dale–Freeman Corporation*, 389 S.W.2d 57, 61 (Mo.1965); *Highfill v. Brown*, 340 S.W.2d 656, 663 (Mo. banc 1960). Even if we assume that Missouri Utilities was indeed negligent its employees were not required to anticipate that Richards might be negligent. This is especially true in light of the high standard of care placed upon the operators of motor vehicles in the state of Missouri. The legislature has heightened the standard of care imposing the duty upon a person operating a motor vehicle to exercise the highest degree of care while doing so. § 304.010 RSMo Cum.Sup.1993. This standard of care requires that a person operating a motor vehicle use such care as would ordinarily be exercised by a very careful and prudent person under the same or similar circumstances. *Hodges v. American Bakeries Co.*, 412 S.W.2d 157, 161 n. 1 (Mo. banc 1967). In addition, the rules of the road, as codified in §§ 304.014, 304.015 RSMo Cum.Sup.1993, require operators to drive as near to the right hand side of the road as practicable. Due to the high standard of care and the rule of the road that requires drivers to be on the right side of the road, Missouri Utilities had no reason to anticipate that Richards would enter the northbound lane and remain there well after she passed the backhoe. It requires no proof to show that modern automobiles respond quickly and accurately to the touch of a driver's hand. *Moore v. Ervin*, 374 S.W.2d 142, 149 (Mo. banc 1964); *Kaelin v. Nuelle*, 537 S.W.2d 226, 235 (Mo.App. 1976); *Shaw v. Griffith*, 291 S.W.2d 230, 235 (Mo.App.1956). In two hundred-fifty to three hundred feet traveling at thirty miles per hour, she could have safely gotten her vehicle over into her own lane of traffic. More troublesome is the fact that Richards did not even attempt to return to her own lane. Apparently from Richards' testimony offered by Buck, the thought that she ought to get back into her own lane as she approached the crest of the hill never crossed her mind. Buck's contention that Stroder was in the southbound lane of traffic and, therefore, Richards could not have gotten out of harm's way is irrelevant. Richards testified that she did not see Stroder in the southbound lane. Since she did not see him, it could not influence her decision whether or not to get over into her own lane. Missouri Utilities had no reason to anticipate such behavior from the operator of a motor vehicle.

For Richards' action to be merely contributorily negligent, subsection (b) requires that a reasonable man knowing that they had diverted Richards into the northbound lane would not regard it as highly extraordinary that she stayed there. Again, due to the high standard of care required of drivers and the rule of the road that requires drivers to drive on the right side of the road, it was highly extraordinary that Richards remained in the wrong lane of traffic. Moreover, Richards was driving towards the crest of a hill in the wrong lane of traffic on a road on which she was very familiar. To place herself in such a position of peril, not to mention the position of danger in which she placed other drivers, to a reasonable person would be considered highly extraordinary. Thus, under the restatement, her actions would not fall to the level of mere contributory negligence.

▮ In order to not be the superseding cause of the accident, subsection (c) requires that Richards' staying in the northbound lane was a normal consequence of Missouri Utilities diverting traffic into the northbound lane and her staying in the northbound lane was not extraordinarily negligent. The first element of subsection (c) is not satisfied. Staying in the wrong lane of travel is not the normal consequence of traffic going around an obstacle in the roadway. A driver employing the highest standard of care, as required by the legislature, should return to its own lane of travel after passing an obstacle in the road. Richards made no attempt to do so as she approached a situation which placed herself and other drivers in peril. On the second point of subsection (c), Comment g to Restatement (Second) of Torts, § 447, is insightful.

> While the fact that such an intervening act of a third person is negligent does not prevent the actor's negligent conduct from being a legal cause of the harm resulting therefrom to another, the negligence of the act may be so great or the third person's

conduct so reckless as to make it appear an extraordinary response to the situation created by the actor and therefore a superseding cause of the other's harm.

Restatement (Second) of Torts, § 447, cmt. g.

It was extraordinarily negligent or at least extremely reckless that Richards remained in the wrong lane of travel, maintained her rate of speed, on a road with which she was familiar, as she traveled towards the crest of a hill. To violate the standard of care required for drivers in this manner constitutes gross, extraordinary negligence and renders the negligence of Missouri Utilities remote and not the proximate cause of Buck's injury.

 The granting of a defendant's motion for judgment *non obstante veredicto* is proper only if that motion properly identifies one or more elements of the plaintiff's case which are not supported by the evidence. *Stegeman v. First Mo. Bank of Gasconade Cty.,* 722 S.W.2d 349, 352 (Mo.App.1987); *Goodenough,* 637 S.W.2d at 125; *Stix Friedman & Company v. Fidelity & Deposit Company,* 563 S.W.2d 517, 521 (Mo.App.1978). We find that the manner in which Richards operated her vehicle was extraordinarily negligent and Missouri Utilities had no reason to anticipate the extreme nature of her negligence. Her negligence was not the natural and probable outcome of Missouri Utilities' actions. Richards' actions broke the chain of causation, and thus, an element necessary to establish negligence is absent from Buck's case. We find that the trial court properly identified the elements to sustain a judgment *non obstante veredicto.*

The determination that the granting of the judgment *non obstante veredicto* was proper is dispositive of the appeal. Therefore, we do not address appellant's second issue of the trial court's conditional grant of a new trial to the respondent based upon a plaintiff's verdict directing instruction allowing a "roving commission" to the jury.

Judgment affirmed.

SMITH, P.J., and WHITE, J., concur.