Becky Lynn LETTIERI, aka Becky Shears Lettieri, Appellant,

v.

The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Appellee.

No. 78-2571.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 10, 1980.

Decided Aug. 22, 1980.

Rehearing Denied Oct. 2, 1980.

John P. McDonnell, Sullivan & Shane, San Francisco, Cal., for appellant.

Walter R. Allan, San Francisco, Cal., argued, for appellee; Harlan M. Richter, William O. Dillingham, Pillsbury, Madison & Sutro, San Francisco, Cal., on brief.

Before MERRILL, GOODWIN and ANDERSON, Circuit Judges.

GOODWIN, Circuit Judge.

California beneficiaries[1] of a life insurance policy appeal a judgment in favor of

1. Becky Lynn Lettieri, Joyce Lettieri Zirpolo and Anthony D. Lettieri are joined in this appeal as parties plaintiff, the latter two having been brought into the case as defendants in a counterclaim. They were also plaintiffs in intervention in the district court, but all of their claims have been consolidated in this appeal.

the insurer. The district court ruled that the substantive law of New York, rather than that of California, governed the questions of the enforceability of the policy. Because the plaintiffs had no legal theory upon which to proceed under New York law, they saved their objection to the choice-of-law ruling and judgment was entered.

The decedent, Alfredo Lettieri, a resident of New Jersey, while in poor health, bought a $400,000 five-year term life insurance policy from an agent Alfredo met in a New York City bar. Alfredo named his estate and his son Anthony, a California resident, as beneficiaries. His wife Becky later was substituted for the estate.[2]

Alfredo obtained his required medical examination in New York City from a Dr. Martin, a physician on the insurer's approved medical examiner list. Neither Alfredo's medical history nor medical examination reports, which were completed and signed by Dr. Martin, revealed Alfredo's current or past ailments (save for an early appendectomy). Alfredo had been addicted to heroin as a youth, had been hospitalized for alcohol-related treatment, was at the time of the examination suffering from liver disease and alcoholism, and had other abnormalities that should have been obvious to a medical examiner.

The company issued the insurance policy in reliance upon Alfredo's application, which included the medical reports. Alfredo's signature certified the truthfulness of the application's contents. Within four months, Alfredo died of a bleeding ulcer in part caused by excessive use of alcohol. The insurer conducted an investigation of the claim and uncovered the falsehoods and omissions in the insurance application. The insurer then denied liability on the policy, asserting a right to rescind the policy upon discovery of the concealment or misrepresentation of material fact by the insured with respect to his medical history and state of his health when he applied for the policy. The beneficiaries brought this action in California where the choice of law appeared to be more favorable than that of other possible venues.

Under the substantive laws of both California and New York, an insurer may avoid liability on a policy procured through material misrepresentations by the insured. Where the laws arguably differ is in the method by which the factual issues are determined.[3]

Under New York law the insurer has an absolute right to rescind a life insurance policy if the application, signed by the insured and attached to the policy, contains false statements or omissions about medical history which the insured failed to correct. Under New York law, then, false statements or omissions about health are conclusively presumed to be material misrepresentations. *Minsker v. John Hancock Mut. Life Ins. Co.*, 254 N.Y. 333, 173 N.E. 4 (1930). *See John Hancock Life Ins. Co. v. Yates*, 299 U.S. 178, 180, 57 S.Ct. 129, 130–131, 81 L.Ed. 106 (1956). Thus, the district court's choice of New York law effectively precluded plaintiffs from pursuing their theory that the decedent had in fact disclosed the whole truth to Dr. Martin, and that Dr. Martin, or one of his employees, acting as the insurer's agent, or the company itself, had negligently or otherwise kept

**2.** Nine days after Alfredo's death, the insurer received a change of beneficiary form, dated nine days before the death, substituting Becky as a beneficiary in place of the estate. When the policy was written, and until the date of her husband's death, Becky was a New Jersey resident. Before filing this action, Becky resumed her earlier residence in California. The validity of the beneficiary change is also contested but is not before us on appeal.

**3.** We are not concerned with proof of materiality. In this case, the omissions and misstatements in the insurance application were material. The only triable questions are whether Alfredo in fact misrepresented his health histo-

Alfredo's true medical history from reaching the insurer's files.[4]

■ As we have already noted, California law also permits the insurer to avoid liability on a life insurance policy issued to an applicant who made material misrepresentations about health history. However, the parties disagree over whether the question of misrepresentation under that state's law remains one for the trier of fact even in the face of untrue statements or omissions in an application. Plaintiffs maintain that California law permits them to offer a plausible explanation for the falsehoods appearing in the insurance application, an explanation which the insurer then may rebut in order to avoid liability on the policy. They cite *Thompson v. Occidental Life Ins. Co.*, 9 Cal.3d 904, 109 Cal.Rptr. 473, 513 P.2d 353 (1973), to support this position. The defendant, on the other hand, argues that *Thompson* is limited to its peculiar facts, and that California would apply a conclusive presumption similar to New York's in the instant situation. The insurer relies on the old case of *Telford v. Occidental Ins. Co.*, 9 Cal.2d 103, 69 P.2d 835 (1937).

We agree with plaintiffs' interpretation of California substantive law. In *Thompson*, the California Supreme Court upheld the trial court's finding that the insurer was liable on a life insurance policy despite obvious misstatements and omissions concerning the insured's medical history in the signed application. The court reached this result through a broad willingness to engage in speculation concerning plausible reasons—other than actual misrepresentations by the insured—for the falsehoods, speculations for which as the dissent in

*Thompson* points out, there was little supporting evidence in the record. Although the insured in that case had answered truthfully about his basic medical problem, the court indicated that misstatements or nondisclosures could be excused even absent some minimal disclosure. For example, the court suggested that the trial court may have concluded that the insured forgot or did not appreciate the significance of the undisclosed facts, or that he did, in fact, disclose the truth to the medical examiner but that the latter inadvertently or intentionally failed to record it. The court went on to hold that, in order to avoid liability based on material misrepresentation, the insurer must negate, to the trier's satisfaction, the plausible explanations offered by the beneficiary-plaintiff for the false or incomplete answers in the application. Although the case represents a departure from the earlier ruling of *Telford*, which was similar to current New York law, *Thompson* states the most recent California law on the issue to be resolved here. Because California case law differs from that of New York, we must address the choice of law question raised on appeal.

■ A federal court applies the choice of law rules of the state in which it sits, here California, to determine the substantive law to apply in a diversity action. *Klaxon Co. v. Stentor Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–1022, 85 L.Ed. 1477 (1941). The parties agree that California uses governmental interest analysis as its choice of law rule, supplemented by the doctrine of comparative impairment in

ry and under what substantive law that issue should be determined.

4. Plaintiffs' theory was that Alfredo had disclosed his health history but had wished to hide it—particularly his earlier heroin addiction and present alcoholism—from his family. They then surmise that Alfredo had requested that the attached report not reveal his actual history and condition, but that a second confidential and accurate report be forwarded separately to the insurer. No such confidential report is in the file. Plaintiffs assert that this failure is due to the negligence of either the doctor or the

insurer. The ultimate credibility of this theory is not before us. Alfredo had obvious physical abnormalities at the time of his medical examination but none were noted on the report. Dr. Martin testified that although he could recall nothing about Alfredo or the examination, he signed the reports; therefore, he assumed that he must have conducted the examination as he normally did. He stated that if those abnormalities were present, he would have detected them. He further testified, consistently in part with plaintiffs' theory, on how he might have handled a request for a confidential report.

cases posing a true conflict.[5] *Travelers Ins. Co. v. Workmen's Comp. App. Bd.*, 68 Cal.2d 7, 11–15, 434 P.2d 992 (1967); *Bernhard v. Harrah's Club*, 16 Cal.3d 313, 128 Cal.Rptr. 215, 546 P.2d 719 (1976). They disagree, however, on the result that application of these rules yields in the present case.

New York law and California law implement competing governmental interests in the context of this case. The defendant is a New York insurer. New York has an interest in protecting its resident insurance companies from fraudulent claims and is also interested in regulating the conduct of parties forming insurance contracts within its borders. California has an interest in the rights of local plaintiffs, and while California law does not purport to demand for its resident-beneficiaries an absolute right to collect proceeds in the face of actual misrepresentation or fraud against insurers, it has economic, and, as the forum, judicial interests, in protecting its residents from an erroneous denial of insurance proceeds. Plaintiffs' theory here is that their claims are, in fact, valid despite what appear to be errors, omissions, or misstatements in the decedent's application. Without the opportunity that California law provides its residents to pursue such a theory, these residents might become an economic burden to the state.

Competing interests of two interested states direct the next inquiry, therefore, thus: As between California and New York, "whose interest would be the more impaired if its law were not applied"? *Bernhard v. Harrah's Club, supra*, 16 Cal.3d at 320, 128 Cal.Rptr. at 219, 546 P.2d at 723.

If California law is applied, the New York insurer still receives some protection against fraud, although at the additional cost of having to submit the issue of the insured's misrepresentation to the hazards of local triers of fact.

Assuming, as we must, that triers do their work impartially, and can discern fraudulent claims from those which are only apparently fraudulent, the insurer has all the protection insurers in interstate business are entitled to expect. The extra litigation expense occurs only when the beneficiaries reside in, or move to, a jurisdiction like California. That additional economic burden can be spread actuarially among policy purchasers across the nation as a cost of doing business nationwide. Thus, even if New York has an interest in protecting its resident insurers from those litigation costs, even that interest is not unreasonably impaired by application of California law. In theory, truly culpable conduct will still be deterred. The effect of the California rule will be to protect the legitimate claims of local beneficiaries while permitting the insurer to prevail if the decedent's conduct was as culpable as the paper record on its face tends to prove.

We conclude that New York interests would not be greatly impaired if California law were applied in this case. On the other hand, some significant California policy or interest would be impaired if New York law were applied. By virtue of their position, beneficiaries cannot protect their own interests at the insurance contract formation stage. Thus, if they are to be denied proceeds because of fraud at the time the insurance contract is entered into, beneficiaries have a strong need for protection from an erroneous denial—that is, denial when in fact the insured did not withhold material facts from the insurer. California affords its resident beneficiaries greater protection than does New York by leaving the question of actual misrepresentation to the trier rather than by resorting to a conclusive presumption. If New York law were to govern, then some California beneficiaries with valid claims might be denied the policy proceeds without any concomitant furtherance of New York's interests in

---

**5.** Because the district court did not explain its choice of law ruling, it appears that the ruling rested essentially on "contact" rather than "interest" analysis, the former being the defendant's primary rationale below. *See Lyons v.* *City of Los Angeles*, 615 F.2d 1243, 1246 (9th Cir. 1980). If interest analysis were to yield the same result, we would affirm the decision regardless of error in the theory relied upon by the district court.

**934**

protecting its insurers against invalid or fraudulent claims. Application of the doctrine of comparative impairment in this case, then, should lead to the adoption of California law.

The insurer seeks to avoid this result by arguing, among other things, that denial of the force of New York law would lead to forum shopping and nonuniformity of result on the same policy if beneficiaries should reside in different jurisdictions. Neither of these possibilities is present under the facts of this case. The insurer knew from the time the policy was issued that one beneficiary was a California resident. It thus had notice that a claim might arise from that state and the insurer could have protected itself better at the onset by conducting an investigation appropriate to the risk being underwritten. Both individual plaintiffs here are bona fide residents of the same state. There is no evidence that Becky Lettieri took up her residence for the purpose of forum shopping, and we express no opinion on the effect of such evidence if it were present.

The judgment is vacated and the case is remanded for further proceedings under the guidance of California law to the extent that it applies in federal diversity litigation within the district.

Remanded.