Frank Lee **HICKS, and Mid-City Truck Painting and Reconditioning, Inc., and Mary Hicks, Plaintiffs-Appellants,**

v.

**GRAVES TRUCK LINES, INC., and James Westerfield, Jr., Defendants-Respondents.**

No. WD 36842.

Missouri Court of Appeals, Western District.

March 4, 1986.

Robert J. Wise, Krigel & Krigel, P.C., Kansas City, for plaintiffs-appellants.

Steven J. Borel, Lee M. Smithyman, Kansas City, Kan., for defendants-respondents.

Before CLARK, C.J. Presiding, and TURNAGE and KENNEDY, JJ.

CLARK, Chief Judge.

This suit for property damage to an automobile and a counterclaim and cross-claim for personal injuries arose out of an automobile truck collision in Kansas. The parties were the Missouri resident automobile owner, the Kansas corporation trucking company licensed and admitted to do business in Missouri, the Missouri resident truck driver and, as a third party defendant, the Missouri resident automobile driver. The case was tried to a jury which was instructed on apportionment of fault according to Kansas law. The jury verdict found the automobile driver 60% at fault and the truck driver 40% at fault. Under the principles of Kansas law, the consequence was no award of damages to the automobile owner. The latter and the third party automobile driver appeal.

The accident occurred August 14, 1981 when the automobile and the truck collided on a bridge. Both vehicles were west bound, the truck in the left lane and the auto to its right. The dispute as to the cause of the accident, a matter not at issue on this appeal, was whether the automobile first struck the side of the bridge and was then thrown in the path of the truck or whether the truck drifted into the right-hand lane and crowded the car between it and the bridge. Frank Hicks was apparently the owner of the car, a subject addressed below, Mary Hicks was the driver, Graves Truck Lines, Inc. owned the truck and James Westerfield, Jr., who asserted a personal injury claim, was the truck driver.

The case was submitted using, in the main, Pattern Instructions of Kansas (P.I. K.). These included a comparative fault instruction based on the Kansas statute which provides a system of modified comparative fault. K.S.A. 60–258a (1983). Under Kansas law, a party may recover damages ratable to his proportion of fault in the occurrence, but only if his negligence was less than that of the party against whom the claim is made. Under this formula, plaintiff automobile owner here was denied any recovery because the auto driver was determined by the jury to have been more at fault than Westerfield, the truck driver. Appellants contend the trial court erred in using the P.I.K. forms for a case tried in Missouri and in applying the Kansas statute of modified comparative fault.

Before addressing the points raised on appeal, it is necessary to consider the status of Mid-City Truck Painting & Reconditioning, Inc. as an appellant. Mid-City entered the case as an additional plaintiff in the first amended petition under which the case was tried. The first petition had alleged Frank Hicks was the owner of the automobile. In the amended petition, which retained Hicks as a plaintiff, it was alleged Mid-City owned the car. At trial, no mention was made of Mid-City either as owner of the auto or as the employer of Mary Hicks. Frank Hicks testified he owned the car and Mary Hicks said she worked for Frank. Appropriate to this evidence, no provision was made in the instructions for the jury to return a verdict for or against Mid-City and the judgment entered makes no mention of Mid-City. In consequence, Mid-City is not aggrieved by the judgment and has no standing to ap-

peal. Section 512.020, RSMo. 1978. The appeal of Mid-City Truck Painting & Reconditioning, Inc. is dismissed. The points on appeal by Frank Hicks and Mary Hicks all relate to claims of instruction error. They are grouped by common subject matter.

## CHOICE OF LAW OF COMPARATIVE FAULT

The preeminent point presented for decision is posed by appellants' contention that the trial court erred in applying Kansas law of apportionment of fault. The Kansas law prescribed by statute differs from Missouri law of apportionment of fault as declared in *Gustafson v. Benda,* 661 S.W.2d 11 (Mo. banc 1983), in that the Missouri rule allows a negligent claimant to recover proportionate damages even though his fault may have been greater than that of the other party. Applied to the present case where the jury found Frank Hicks' property damages to have been $12,250.00, under Missouri apportionment of fault, Hicks recovers $4,900.00 whereas under Kansas law he is not entitled to any damages.

The parties assert this question of choice of law in applying a standard of apportionment of fault is one of first impression in this state. Independent research has not revealed any Missouri decision in point. Appellants rely on *Kennedy v. Dixon,* 439 S.W.2d 173 (Mo. banc 1969) as authority. That case holds the outdated concept of lex loci delicti is no longer to be used in Missouri. The opinion adopts the standard of the Restatement (Second) of *Conflicts of Laws,* § 145 (1971). Respondents answer this argument by saying the law of damages embodied in K.S.A. 60–258a is substantive and therefore must be applied because the location of the accident was in Kansas.

The rationale of *Kennedy v. Dixon,* apart from its declaration that lex loci delicti is no longer a viable doctrine, employs the Restatement significant contacts concept. Under that rule, a choice of law is made based on the predominance of con-

tacts with the state whose law is to prevail. The contacts to be taken into account are:

"(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered."

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

In *Kennedy v. Dixon,* the Restatement doctrine found ready application because the only significant contact with Indiana was the accident situs. There was no state interest in Indiana referable to enforcement of its automobile guest statute in a contest in Missouri courts between Missouri residents. An entirely different problem arises when the Restatement test reveals significant contacts with two states and a legitimate interest in both states to apply local law to the controversy in suit.

The facts of this suit present such a case. Significant Missouri contacts were: (1) Owner Frank Hicks and driver Mary Hicks were Missouri residents as was the truck driver, Westerfield, (2) The damaged Oldsmobile, the subject of the claim, was licensed in Missouri and presumably garaged in Missouri, (3) The business by which Mary Hicks was employed was sited in Missouri from which location her mission on the day of the accident originated and to which she would have returned. The Kansas contacts were: (1) Kansas was the place where the conduct complained of occurred and where the damage was sustained, (2) Graves Truck Lines, the party sought to be held liable for the claim is a Kansas corporation and has its place of business in Kansas.

The legitimate state interest of Missouri in application of Missouri comparative fault rules arises from a policy of compensating Missouri residents in the courts of this state in the manner which this state's laws have declared. The policy is particularly

applicable where, as here, the Kansas accident location was fortuitous and unrelated to any other relationship of the parties. The Kansas state interest, however, must also be recognized. That interest is the entitlement of Kansas to shield its residents from the effects of torts committed in the state if the claimant is found to have been the more at fault. Thus, the present case is not susceptible of decision based merely on application of *Kennedy v. Dixon* because, first, there is no overbalancing of Restatement contacts favoring Missouri or Kansas and, second, legitimate state interests of both Kansas and Missouri are involved.

Upon careful analysis, *Kennedy v. Dixon* is found not to be a true choice of law case. This follows from the discussion in the opinion which demonstrates that no significant Restatement contacts with Indiana were present and no legitimate application of Indiana state interests were at issue. A real choice of law problem is presented when the contacts of both states with the event are sufficient under the Federal Constitution to permit each state's law to be applied. Leflar, *American Conflicts Law*, § 93, (3rd Ed.1977). This is the issue in the present case not controlled by *Kennedy v. Dixon* or any other reported Missouri case. We turn, therefore, to consideration of decisions in other states.

When faced with this problem, some states have reverted to a rigid formula. Thus, in *State Farm Mutual Automobile Insurance Company v. Olsen*, 406 So.2d 1109 (Fla.1981), the question was whether Florida or Illinois law should apply to decide the rights of a Florida motorist against his insurer when the Florida vehicle collided with an uninsured driver in Illinois. The court recognized its adoption of the Restatement, § 145, in prior decisions but ruled the case was controlled by Illinois law. The decision pays lip service to the significant contacts theory but decides the case essentially on lex loci delicti, "for reasons of uniformity and ease in determination and application of the law." *Id.* at 1111. A dissent in the case focuses on this feature.

A Kentucky case, *Foster v. Leggett*, 484 S.W.2d 827 (Ky.App.1972), announces a theory which gives general preference to the law of the forum state. Plaintiff's decedent, a Kentucky resident was killed in an automobile accident which occurred in Ohio. The driver of the car in which the decedent was a passenger was an Ohio resident. The suit was brought in Kentucky which was the point of origin of the motor trip and the anticipated point of return. The issue was whether Ohio's guest statute applied to define the standard of negligence. Notwithstanding the contacts with Ohio as the state where the accident and injury occurred and the state of defendant's residence, the court held Kentucky law which had no guest statute was applicable. "When the court has jurisdiction of the parties, its primary responsibility is to follow its own substantive law. The basic law is the law of the forum, which should not be displaced without valid reasons." *Id.* at 829. Under this approach, significant local contacts under the test of the Restatement, § 145, are enough to warrant use of the forum law without balancing foreign contacts and interests.

Facts very similar to the subject case are found in *Sabell v. Pacific Intermountain Express Co.*, 536 P.2d 1160 (Colo.App. 1975). A Colorado resident sued two trucking companies which were admitted to do business in Colorado (as was Graves Truck Lines admitted to do business in Missouri). The accident had happened in Iowa. One question was whether the contributory negligence doctrine of Iowa, which would bar plaintiff's recovery, should apply or whether the court should employ the comparative fault concept approved in Colorado. The court held Colorado comparative fault was the proper doctrine, making a distinction between "rules of conduct" which are designed to protect the public from acts committed within the state, and "rules of recovery" which determine how disputes are resolved. Colorado was viewed as having a legitimate interest in applying its laws not only to its residents, but to all who seek

relief in its courts where the conflict issue is one of rules of recovery.

A number of states have adopted a conflict resolution rule referred to variously as the governmental interest analysis, *Williams v. Williams*, 390 A.2d 4, 5 (D.C.App. 1978), the flexible governmental interest approach, *Baron & Co. Inc. v. Bank of New Jersey*, 504 F.Supp. 1199, 1204 (D.N.J. 1981), the comparative impairment of state policies, *S.A. Empresa v. Boeing Co.*, 641 F.2d 746 (9th Cir.1981), or advancement of the forum's governmental interest. *Hime v. State Farm Fire & Casualty Co.*, 284 N.W.2d 829, 833 (Minn.1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980). The opinion in *Reyno v. Piper Aircraft Co.*, 630 F.2d 149 (3rd Cir.1980), *rev'd* on unrelated grounds, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) points out that the governmental interest approach was pioneered by the courts of California using an analysis developed by Professor Currie. B. Currie, *Selected Essays on the Conflict of Laws* (1963). The concept was further refined to the comparative impairment approach. As described in *Offshore Rental Company, Inc. v. Continental Oil Company*, 583 P.2d 721, 726 (Cal. banc 1978), the comparative impairment approach seeks to determine which state's interest, assuming a "true" conflict, would be more impaired if its policy were subordinated to the policy of the other state. This analysis proceeds on the principle that true conflicts should be resolved by applying the law of the state whose interest would be the more impaired if its law were not applied.

Unconstrained by prior Missouri authority, we conclude the government interest analysis offers the better method for resolving true conflict of laws cases, that is, cases in which the Restatement, § 145 test discloses significant contacts with two or more states, each of which has a legitimate local interest in the particular issue in contest. The applicability of the doctrine to the subject case is illustrated by comparison with the facts and decision in *Lettieri v. Equitable Life Assurance Society of the United States*, 627 F.2d 930 (9th Cir.1980).

In *Lettieri*, the conflicts issue was whether New York or California law governed the avoidance of a life insurance policy on account of material misrepresentations in the application. The policy had been written in New York, the residence state of the insured and the insurer, and named California residents as beneficiaries. The state of the insured's health was not revealed in the policy application. Under New York law, any false statements or omissions about medical history in a life insurance application are presumed to be material misrepresentations and give the insurer an absolute right to rescind the policy. Under California law where this suit was brought by the beneficiaries, the claimants may offer a plausible explanation for the misstatements in the policy application, as for example a lapse of memory, and the insurer must then rebut the explanation to avoid liability on the policy.

The court discussed the government interest analysis choice of law rule noting that New York had an interest in protecting its resident insurance companies from fraudulent claims. California also had an interest in the rights of local plaintiffs who, if New York law were applied, would be precluded from recovery in cases where an impartial trier of fact would conclude the policy application misstatements were not fraudulent. Answering the question of which state's interest would be more impaired if its law were not applied, the opinion concluded that New York interests would be least affected. Under California law, a New York insurer may still avoid fraudulent claims but, at the same time, legitimate claims of local California beneficiaries are recognized.

The rationale of *Lettieri* and the governmental interest analysis are applicable to the present case. Significant Missouri interests are impaired if the Kansas modified comparative fault doctrine is applied to deny any ratable damage recovery to Missouri claimants who sue in Missouri courts. Absolute foreclosure from recovery of damages by any claimant who is deter-

mined to have been at least 50% at fault denies reasonable compensation and imposes economic hardship contrary to the policy of this state. Conversely, Kansas interests are not greatly impaired if Missouri comparative fault law is applied in such cases. Even though a Kansas resident may thereby be required to pay some damages, he still receives some protection in that the amount is reduced in direct proportion to the contributing fault. Moreover, it must be recognized that Kansas residents become subject to the Missouri comparative fault rule only by conduct which also subjects them to the jurisdiction of Missouri courts.

We conclude, therefore, that the doctrine of comparative impairment should be adopted to resolve choice of law cases in which the facts indicate significant contacts with Missouri and another state under the Restatement § 145 test and in which both states have legitimate state interests in the law choice. Application of the doctrine in this case leads to a choice of Missouri comparative fault as applicable to determine the damage recovery available to appellant Frank Hicks. Point VI of appellants is sustained.

Because this case is to be remanded for a new trial, other claims of instruction error in the first trial raised by additional points in appellants' brief require discussion.

## USE OF KANSAS INSTRUCTION FORMS ON ISSUES OF KANSAS SUBSTANTIVE LAW

In Points I and IV, appellants contend jury instructions 3, 4, 6 through 10, 12, and 20 were given in error because use of P.I.K. forms violates the mandatory requirement for use of MAI forms where available, and because instructions containing abstract statements of law are not permitted in Missouri. In Points II and V, appellants contend instructions 7 and 20, given in the forms approved in Kansas, were in error because they included sub-

missions of negligence and damages unsupported by any evidence in the case. Respondents agree the instructions complained of were not MAI forms and were essentially Kansas form instructions. This was the proper way to instruct the jury on issues of Kansas substantive law, respondents argue, because the P.I.K. forms best present issues of Kansas law.

A predominant difference between the Kansas instructions used in this case and the otherwise applicable MAI forms is the extensive use in P.I.K. forms of abstract statements of law unaccompanied by any required finding by the jury on the proposition under the evidence in the case.

Instruction 4 as given, for example read:

"The corporate defendant in this case is entitled to the same fair and unprejudiced treatment as an individual under like circumstances."

Instruction 6 treating the standard of care read:

"As standards of ordinary care certain duties are imposed by law. They apply to persons who use the streets and highways. It is for you to decide from the evidence whether or not any of the following duties apply in this case and whether or not any have been violated. The violation of a duty is negligence."

There is no disagreement among the parties as to the proposition that the duty of care imposed on the respective drivers involved in this Kansas accident is that provided by Kansas law. The "rules of conduct" to be hypothesized in the instructions are controlled by Kansas law. It is also beyond dispute that under the facts of this case, Missouri pattern instructions were available to submit the law of the case to the jury in conformance with Kansas substantive law.[1] In this situation, it was error for the trial court to have used the P.I.K. forms because they violate settled propositions of Missouri law.

1. The duty of care imposed on a motorist using Kansas highways differs slightly from the highest degree of care standard imposed in Missouri.

As to this element of the case, the proper instruction would be MAI 11.02(I).

**446**

The facts of the accident in this case and the substantive law of Kansas acknowledged to be applicable did not preclude use of MAI form jury instructions. Respondents do not suggest otherwise. Instead they argue that the standards of care which govern parties driving in Kansas are "most readily found in the Kansas Pattern Instructions." If, as respondents tacitly concede, the principles of Kansas law could have been submitted through use of MAI, the use of P.I.K. forms violates Rule 70.-02(b). That rule states that Missouri Approved Instructions are to be given to the exclusion of any other on the same subject whenever an MAI is applicable to the case.

In *Meredith v. Missouri Pacific Railroad Company*, 467 S.W.2d 79 (Mo.1971) where, as here, Kansas substantive law controlled in a damage suit brought in consequence of a Kansas accident, the court held the form of instructions to be governed by the law of Missouri. If the Missouri Approved Instructions include an instruction which correctly states the substantive law of Kansas, the approved instruction must be given. *Id.* at 82. *See also Warriner v. Eblovi*, 485 S.W.2d 700 (Mo.App.1972).

Respondents also suggest that even if it was error to use the P.I.K. forms, no prejudice resulted. This argument of harmless error ignores the fact that the instructions were not only improper, and thus presumed to be prejudicial because a deviation from MAI, *Jarrell v. Fort Worth Steel & Manufacturing Co.*, 666 S.W.2d 828, 837 (Mo. App.1984), but they violated other rules as well.

■ Throughout the P.I.K. forms which the court gave in this case, the jury is given general statements of law without any corresponding reference to a finding by the jury under the facts in evidence. It has repeatedly been held in Missouri that abstract statements of law requiring no finding by the jury do not make proper jury instructions. *Gaffner v. Alexander*, 331 S.W.2d 622, 627 (Mo.1960). Instructions containing only abstract statements of law are misleading and should be refused.

*Chism v. Cowan*, 425 S.W.2d 942, 949 (Mo. 1967). By reason of the wholesale use in the subject case of jury instructions containing abstract statements of law with no corresponding finding to be made by the jury, the instruction error is necessarily deemed prejudicial.

The particular objections by appellants to Instructions 7 and 20 will serve to illustrate further the incompatibility of the P.I.K. forms with Missouri procedural law. Instruction 7 was an abstract statement of law covering the duty of an automobile driver to keep his vehicle under control, to drive within his range of vision and to avoid a collision by stopping, slowing or turning. Instruction 20 on damages included a list of potential items of personal injury damages from which the jury was instructed to select those applicable to the subject case. Neither instruction purported to be based on the evidence in the case. Under the theory of P.I.K., a jury is entitled to choose from the listing of duties of care in operating an automobile and the items of damages and apply any which are consistent with the evidence, discarding those which are irrelevant.

■ MAI does not contain instructions of this type because the theory of MAI is that instruction on a particular point of negligence or damages cannot be given unless supported by substantial evidence of probative force. In the case of P.I.K. instruction 7, it was inappropriate to describe the Kansas "range of vision" rule because there was no evidence either Mary Hicks or James Westerfield did not operate their vehicles within the range of their vision. Indeed, Mary Hicks testified to her awareness of the truck sometime before the impact and no witness even suggested that a failure to drive within the range of vision contributed in any way to cause the accident. So, too, was it improper for Instruction 20 to list as potentially compensable damages the items of hospitalization, disfigurement and mental anguish for which no evidence had been presented. It is basic that an instruction which invites or directs a jury to allow for any item of damages

must be supported by substantial evidence. *Kramer v. May Lumber Company*, 432 S.W.2d 617, 620 (Mo.App.1968).

We conclude, therefore, that Instructions 3, 4, 6 through 10, 12 and 20, which followed Kansas P.I.K. forms were prejudicially erroneous, should not have been given and should not be repeated on retrial.

## THE MAI VERDICT DIRECTING INSTRUCTION

In Point III, appellants contend Instruction 19, the verdict director for the counterclaim and cross-claim of respondent Westerfield, was in error by the inclusion of negligence submissions for failure to keep a careful lookout and failure to maintain proper control of the vehicle. They say as to the first proposition, there was no evidence relative to lookout and as to the second, the submission of a general negligence charge is impermissible under Missouri law.

Instruction 19, in contrast with other instructions discussed previously in this opinion, was in the form of a Missouri Approved Instruction. It was patterned after MAI 17.02 modified. In the disjunctive, it authorized the jury to return a verdict for Westerfield if it believed: (1) that plaintiff failed to keep a careful lookout, or (2) that plaintiff drove at an excessive speed or (3) that plaintiff failed to maintain her vehicle in the proper lane of traffic, or (4) that plaintiff failed to maintain proper control of her vehicle.[2]

The evidence in the case indicated that Mary Hicks was aware of the presence of the Graves truck well before the accident and had the truck in view up to the point of collision. No contention was ever made by respondents that Hicks did not see the truck. In fact, part of respondents' theory as to the cause of the accident was that Hicks panicked because she saw the truck and, at that time, she was driving too fast and ran into the side of the bridge. In order to warrant a lookout instruction, there must be evidence to support a finding that the driver charged with failing to keep a careful lookout could have avoided the collision by means which he possessed but failed to use. *Hawkins v. Whittenberg*, 587 S.W.2d 358, 361 (Mo.App.1979). There was no such evidence in this case. A lookout submission should not have been included.

The second prong of appellants' attack on Instruction 19 complaining of the general negligence submission, "failed to maintain control of her vehicle," must also be sustained. In *McIntyre v. Whited*, 440 S.W.2d 449, 451 (Mo.1969), the instruction submitted a failure to operate a vehicle in compliance with the rules of the road combined with a specific submission of driving on the wrong side of the road. The court observed, citing prior authority, that it has long been the rule a case may not be submitted on both general and specific negligence and the rule is equally applicable to MAI instructions. By submitting disjunctive charges of general and specific negligence, the jury is not confined to the factual issues but may speculate on other omissions in the nature of a roving commission. *Lucky v. Avon Products, Inc.*, 589 S.W.2d 364 (Mo.App.1979). Appellants' Point III is also sustained.

By reason of the instruction errors above, the judgment is reversed and the case is remanded for a new trial on all issues.

All concur.

---

2. The instruction intended to refer to Mary Hicks, the driver of the automobile, we assume. The plaintiff, Frank Hicks, was charged with liability in the counterclaim, but was not a driver of any vehicle involved. Mary Hicks should have been described in the instruction as a defendant.