Michael A. HAMMONS, Respondent,

v.

MISSOURI HIGHWAY & TRANSPORTATION COMMISSION, Appellant,

Charles Dobelbower, Appellant.

No. WD 47444.

Missouri Court of Appeals,
Western District.

March 1, 1994.

---

948

Judy L. Curran, Kansas City, for appellants.

Hayward G. Lafferty, Jr., Kansas City, for respondent.

Before BERREY, P.J., and BRECKENRIDGE and SMART, JJ.

SMART, Judge.

This case arises from an accident on an interstate highway between an automobile and a highway department protective truck. The Missouri Highway and Transportation Commission ("MHTC") and Charles Dobelbower, defendants, appeal from the trial court's judgment which awarded $62,500.00 to Michael Hammons, plaintiff.

Judgment is affirmed.

On March 21, 1988, Michael Hammons collided into the back of a protective truck driven by Defendant Dobelbower and owned by MHTC. The accident occurred at approximately 1:00 p.m. on Interstate 70 in Jackson County, Missouri, about one mile from its interchange with Missouri Highway 291. The highway department protective truck was stopped in the right-hand lane of I–70 protecting a bridge flushing operation. Both Hammons and Dobelbower sustained injuries as a result of the collision.

On August 15, 1989, Dobelbower filed a personal injury action against Hammons for the injuries he sustained. MHTC filed its separate action on August 30, 1989 in subrogation to recover workers' compensation medical expenses paid to Dobelbower for his injuries. These two cases were consolidated. On January 4, 1991, Hammons filed a counterclaim for his personal injuries from the accident against both MHTC and Dobelbow-

er. In April, Dobelbower voluntarily dismissed his petitions with prejudice against Hammons after settling his personal injury claim. Hammons' personal injury counterclaim against MHTC and Dobelbower remained pending and on November 16, 1992, the trial court realigned the parties, designating Hammons as the plaintiff and MHTC and Dobelbower as defendants.

At the trial, both sides presented testimony recalling the course of events which took place the afternoon of the accident. Hammons testified that traffic was thick that day and that he did not exceed the 55 mile per hour speed limit as he proceeded eastbound on I–70 toward Highway 291. He stated he did not see any signs indicating that a lane on the highway was closed. Hammons first saw the highway truck about 120 feet ahead of him, he said, when the car traveling in front of him in the right-hand lane quickly moved over into the other lane. He testified that he immediately hit his brakes and his car collided with the highway truck. Hammons testified that he had no other choice but to hit his brakes because traffic was too heavy for him to get over to the left-hand lane. He testified that he saw no lights on the truck and he thought it was moving slowly when he hit it traveling about 45 miles per hour. At the close of plaintiff's evidence, MHTC made a motion for directed verdict, which was denied by the trial court.

MHTC presented testimony from five witnesses, including Kevin Rose, a Highway Maintenance Supervisor with the highway department; Floyd Riner, a Maintenance Crew Leader with the highway department and the driver of the flusher truck; Defendant Charles Dobelbower, the driver of the protective truck; Rebecca Edwards, an accident investigating officer for the Independence Police Department; and Vida Willingham, an eyewitness to the accident. Rose testified that for a bridge flushing operation the department's maintenance operation manual required only "a protective truck with a flashing arrow board" and that no other warning signs were required for this type of operation. Even though not required by the manual, Mr. Rose testified that in his position as a highway maintenance supervisor, he also required his crews to place warning signs ahead of the operation indicating that either the right or left-hand lanes were closed. After receiving notification of the accident, Mr. Rose went to the scene where he conducted an investigation and completed an accident report. He made a diagram, which showed that two four-foot orange warning signs indicating "Right Lane Closed Ahead" were placed on stands approximately 1.2 miles from the accident scene along with an orange cone at their base. Dobelbower and Riner both testified that they positioned the signs on the highway to warn travelers of the lane close. Riner, Dobelbower, and Willingham all testified that they observed the lights on the arrow sign functioning properly before the accident. After the accident, Rose and Edwards both testified that the lights were functional.

Riner testified that he was in charge of the bridge flushing operation and that he was driving the flusher truck which was cleaning the bridge. Since the bridge did not have a shoulder, the flushing operation was performed in the right-hand lane of the bridge. The protective truck was placed 150 feet behind the flusher truck as it began cleaning the bridge. He testified that the protective truck remained in place, so traffic could see it better, even though the flusher truck moved forward.

Dobelbower testified that he saw Hammons' car approach and that he wondered if it was going to hit him because he saw no signal to indicate movement to the left-hand lane. He stated that he did not have time to get out of the way of Hammons' car, nor would he have tried because his job was to protect the flusher truck. After the accident, Dobelbower went back to check on Hammons and noticed that the arrow board's lights were not working. He theorized that the plug was jarred loose as a result of the impact. He testified that he plugged it back in and noticed it was then operational.

Willingham, the eyewitness to the accident, testified that immediately before the accident, she was in a car traveling eastbound toward Missouri 291. She stated she observed Hammons in the right-hand lane as he approached the truck. She stated that

she wondered why Hammons did not get over to the left-hand lane because he had room to do so. She observed Hammons hit his brakes almost at the same time he hit the truck.

At the close of all the evidence, MHTC renewed its motion for directed verdict. The court denied that part of the motion that went to the submissibility of plaintiff's case under the negligent operation of a motor vehicle, but sustained that portion of the motion concerning submissibility of the case under the dangerous condition exception to sovereign immunity. The case was submitted to the jury, and on November 18, 1992, the jury returned its verdict, evaluating Hammons' damages in the amount of $250,-000.00, assessing 75% fault to plaintiff and 25% fault to defendants. On December 3, defendants filed their motion for judgment notwithstanding the verdict or in the alternative, for a new trial, which was denied by the trial court. Defendants appeal from the trial court's judgment.

Defendants' sole point on appeal is that the trial court erred in overruling their objections to plaintiff's verdict director (Instruction 6) because it was prejudicially erroneous in that it did not follow the substantive law, assumed as true disputed facts and failed to submit only the ultimate facts to the jury on which to predicate defendants' negligence. Instruction 6 was offered by plaintiff as the verdict director for negligent operation of a motor vehicle. This instruction was objected to by defendants on the ground that MHTC had a statutory right to close off a lane reserved for moving traffic and that warning signs had been erected closing the lane to traffic.

Verdict directing Instruction 6 reads:

In your verdict you must assess a percentage of fault to Defendants Missouri Highway and Transportation Commission and Charles Dobelbower if you believe:

First, Defendant Dobelbower stopped defendant's vehicle in a lane reserved for moving traffic, without adequate warning, and

Second, defendants Missouri Highway & Transportation Commission and Charles Dobelbower were thereby negligent, and

Third such negligence directly caused or directly contributed to cause damage to plaintiff Michael Hammons.

Every jury instruction tendered to the trial court is required to cite to the source of such instruction as follows: "MAI No. ——" or "MAI No. —— modified" or "Not in MAI" Rule 70.02(d). The bottom left of plaintiff's instruction contained the notation, "MAI 4th 17.01, 17.20 and 37.01."

■■■ Missouri law provides that in reviewing the sufficiency of jury instructions, a reviewing court must review the evidence in the light most favorable to the submission of the instruction and the submitting party is entitled to the instruction under any theory supported by the evidence. *Kim v. Conway & Forty, Inc.,* 772 S.W.2d 723, 727 (Mo.App. 1989). A jury instruction must fairly submit the issues of a case to the jury and require a finding of all ultimate facts necessary to sustain a verdict. *Karnes v. Ray,* 809 S.W.2d 738, 740 (Mo.App.1991). When a Missouri approved instruction is applicable to the particular facts of a case, its use is mandatory. *Hawkeye–Security Ins. Co. v. Thomas Grain Fumigant Co.,* 407 S.W.2d 622, 628 (Mo.App. 1966). If a party changes an applicable M.A.I., he or she accepts the burden to show that no prejudice resulted from such deviation. *Van Dyke v. Major Tractor & Equipment Co.,* 557 S.W.2d 11, 13 (Mo.App.1977).

First, defendants claim that the instruction erroneously deviated from M.A.I. because plaintiff inserted the words "without adequate warning" in the instruction. Defendants assert that this phrase does not appear in any of the three M.A.I. sections cited by plaintiff. Defendants further claim that neither M.A.I. 17.20 standing alone, nor as modified by plaintiff, properly submitted any specific acts of negligence by defendants upon which liability could be predicated. Defendants contend that §§ 227.250 and 304.015, RSMo 1986 give the State the authority to temporarily close any portion of a state highway to public use for the purpose of construction or repair and to designate what traveled lanes are to be used for traffic. Thus, defendants suggest that MHTC had a right to close the right-hand eastbound lane

on I–70 reserved for moving traffic to perform its maintenance operations. Thus, defendants suggest, the driver of the protective truck was not negligent by stopping the truck in a lane which it had closed to moving traffic. They argue that the instruction failed to properly instruct the jury on what acts constituted negligence on behalf of defendants.

▆▆ Section 227.250, entitled "Commission may close state highway temporarily, when," provides that "The commission shall have power to close temporarily for the purpose of construction or repair any portion of a state highway to public use and to issue regulations controlling the use of state highways and all properties relating thereto." Section 304.015.4, entitled "Drive on right of highway—traffic lanes—signs," reads:

> The authorities in charge of any highway or the state highway patrol may erect signs temporarily designating lanes to be used by traffic moving in a particular direction, regardless of the center line of the highway, and all members of the Missouri highway patrol and other peace officers may direct traffic in conformance with such signs. When authorized signs have been erected designating off-center traffic lanes, no person shall disobey the instructions given by such signs.

MHTC cites these sections as statutory authority giving it the right to temporarily close a lane of traffic on a highway. In order to close a portion of a highway, it is necessary that signs be erected, indicating that such portion is closed, and directing traffic elsewhere. Thus, whether MHTC actually closed the lane to moving traffic was a question of fact to be resolved by the jury. Hammons testified he saw no signs indicating any lanes were closed. Thus, there was testimony presented by Hammons from which the jury could find, if the jury believed Hammons and disbelieved other witnesses, that there were no warning signs or signals notifying traffic that the lane was closed. Although Hammons' testimony might be viewed with less weight than the testimony of other witnesses, his testimony that he did not see any signs indicating any obstructions to traffic was sufficient to create a jury issue. The jury could infer that the reason he did not see any signs was because there were no signs. The reviewing court must look at the evidence in the light most favorable to the verdict, giving plaintiff the benefit of every reasonable inference. This court cannot weigh the evidence. The trial court was entitled to weigh the evidence, and to grant a new trial if the verdict was against the weight of the evidence. The trial court did not order a new trial. Our review is circumscribed.

Defendants cite *Paxton v. American Family Mut. Ins. Co.,* 682 S.W.2d 896 (Mo.App. 1984) to persuade this court that stopping in a lane reserved for moving traffic was not a negligent act on the part of MHTC nor its employee. *Paxton* can be distinguished from this case on its facts. This court in *Paxton* stated:

> MAI 17.20, which reads, "[d]efendant stopped his automobile in a lane reserved for moving traffic," is not appropriate under the facts of this case. Here the initial stopping could not be deemed negligent, for Paxton was required by law to stop for a red light. If any negligence occurred, it dealt with Paxton having remained stopped.

682 S.W.2d at 898. In the instant case, defendants cannot say that Dobelbower's stop was not negligent based solely on statutory authority. The question of whether the lane was reserved for moving traffic or closed to moving traffic was for the jury to determine based on the evidence. Thus, the jury could have found that the protective truck was stopped in a lane of traffic reserved for moving traffic, and that such stopping constituted negligence.

▆ Defendants allege several different problems with the inclusion of the phrase "without adequate warning" in the instruction. Defendants claim that the instruction presented disputed facts as true. They state that the instruction assumed the fact that the truck stopped "without adequate warning" as true. They allege that an instruction which fails to require the jury to find a disputed fact as true results in prejudicial error warranting a new trial. *See Loomstein v. Medicare Pharmacies, Inc.,* 750 S.W.2d 106, 112

(Mo.App.1988). However, when an instruction postulates facts to the jury after the phrase "if you believe," it is not assuming disputed facts as true. It is not necessary to sprinkle an instruction with 'if you so find' in order to avoid the charge of assumption of facts; if the instruction in its beginning, as this one does, plainly requires the jury to find the hypothesized facts from the evidence, that is sufficient. *Yates v. Bradley,* 396 S.W.2d 735, 738 (Mo.App.1965); *see also Pierce v. St. Louis Pub. Serv. Co.,* 380 S.W.2d 943, 949 (Mo.App.1964); *Price v. Seidler,* 408 S.W.2d 815, 824 (Mo.1966).

Next, defendants claim that Hammons submitted his case to the jury under a general submission of negligence by the addition of the phrase "without adequate warning," which was coupled with the specific submission that Dobelbower stopped his vehicle in a lane reserved for moving traffic. Relying on *McIntyre v. Whited,* 440 S.W.2d 449, 451 (Mo.1969) and *Hicks v. Graves Truck Lines, Inc.,* 707 S.W.2d 439, 447 (Mo.App.1986), defendants state that it is trial court error to allow a case be submitted on both general and specific negligence. *McIntyre* and *Hicks* are distinguishable from the present action. Both cases hold that a case may not be submitted on both general and specific negligence. 440 S.W.2d at 451; 707 S.W.2d at 447. However, those cases dealt with submitting disjunctive charges of general and specific negligence. The court in *Hicks* stated: "By submitting disjunctive charges of general and specific negligence, the jury is not confined to the factual issues but may speculate on other omissions in the nature of a roving commission." 707 S.W.2d at 447.

In this case, plaintiff added the phrase "without adequate warning" onto the end of the first paragraph in the instruction. It was not submitted in the disjunctive. This instruction was patterned after M.A.I. 17.20. The M.A.I. instruction did not require inclusion of this phrase for submission of a proper instruction. Defendants claim that the inclusion gave the jury a roving commission permitting "the jury to find negligence against appellants on any theory which they could construct or evolve out of their own minds." However, the inclusion of the additional language in the instruction made it more difficult for the jury to find the existence of negligence, not easier. Thus, the submission of the additional language in the verdict director was not prejudicial to plaintiff.

■ Finally, defendants assert that the instruction did not properly submit plaintiff's theory of recovery, *i.e.,* negligent operation of a motor vehicle. Defendants contend that the instruction allowed the jury to impose liability for a dangerous condition of a roadway as opposed to the negligent operation of a motor vehicle. However, defendants fail to explain how the instruction submits the dangerous condition theory. Clearly, recovery against the state under the dangerous condition exception to sovereign immunity provided in § 537.600 is limited to cases involving physical defects in property, *see Twente v. Ellis Fischel State Cancer Hosp.,* 665 S.W.2d 2, 12 (Mo.App.1983), physical deficiencies in property, *see Jones v. St. Louis Housing Authority,* 726 S.W.2d 766, 774 (Mo.App. 1987), or negligent, defective or dangerous designs, *see Wilkes v. Missouri Highway & Transp. Comm'n,* 762 S.W.2d 27 (Mo. banc 1988). The facts of this case do not give rise to a cause of action for dangerous condition, nor does the verdict director instruct the jury to find for plaintiff under a dangerous condition theory. As stated earlier, the statutory authority cited by defendants gives them the right to temporarily close a lane to moving traffic for construction or repair of a state highway, but whether defendants had closed the lane to moving traffic was a jury issue. The protective truck was a "vehicle" for purposes of the statute. It has been held that the vehicle does not have to be moving to recover under this section. *See State ex rel. Metro. St. Louis Sewer Dist. v. Sanders,* 807 S.W.2d 87 (Mo. banc 1991). Thus, the jury could find the facts of this case constituted dangerous operation of a motor vehicle under § 537.600. Plaintiff did not submit his case under a theory different from that pleaded or proved. The trial court did not err in overruling defendant's objections to the verdict director. For all of the foregoing reasons, defendants' point is denied.

All concur.