Matthew W. WISE, Appellant,

v.

Paul W. POTTORFF, et al., Respondent.

No. WD 54809.

Missouri Court of Appeals,
Western District.

Jan. 19, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 2, 1999.

Application to Transfer Denied
April 27, 1999.

Martin M. Meyers, Kansas City, MO, Attorney for Appellant.

Glenn E. Bradford, Kansas City, MO, Attorney for Respondent.

Before Presiding Judge EDWIN H. SMITH, Judge LOWENSTEIN and Judge LAURA DENVIR STITH.

LOWENSTEIN, Judge.

This appeal involves a personal injury action arising out of a car accident that occurred on November 27, 1993 on Interstate 35 in Kansas. Appellant Matthew Wise was driving his pickup southbound on Interstate 35 at about 3:30 p.m. Wise had planned to exit I–35 at the Gardner exit. Between 135th Street and 151st Streets in Olathe, however, Wise began to notice icy conditions on the highway as well as several cars and trucks that had been forced off the highway due to the inclement conditions. Overall traffic was traveling between 30 and 35 miles per hour, much slower than the speed limit on an interstate highway.

Approaching the Gardner exit, Wise's pickup truck collided with defendant-respondent Paul Pottorff's semi-tractor trailer unit in the inside or passing lane of the highway. Pottorff was an owner/operator for defendant-respondent Andrews Van Lines at the time of the accident. He was heading for Roscoe, Texas, carrying a load of steel railroad doors weighing approximately 30,000 pounds on his flatbed trailer. His total load that day including the weight of the tractor trailer was approximately 60,000 pounds.

Prior to the collision, Wise's vehicle had been traveling in the right or outside lane of traffic while Pottorff's vehicle had been traveling in the inside or passing lane of traffic. Evidence indicated that Wise lost control of his vehicle on the icy highway causing it to slide into the inside lane where Pottorff's truck was traveling. Pottorff testified that he was 20 to 25 feet behind Wise's rear bumper at the time he saw the rear end of Wise's vehicle fishtail. Pottorff tapped on his brakes and began to steer to the left in an attempt to avoid a collision. Wise testified that he initially felt a shove on the rear end of the vehicle as he was approaching the Gardner exit which caused him to take his automatic transmission out of gear and put it into neutral. A second collision occurred following the initial impact between the right side of the semi in the area of the fuel tank and the left rear quarter panel of the pickup truck. A witness to the accident observed Wise's driver's side door come open at some point during the accident sequence after which Wise fell out the open door, landing in the median.

Following the initial collision, Wise next remembered looking up from the median. Wise stated he knew he was hurt immediately because he was unable to move and felt tingling all over his body. As a result of the accident, Wise sustained a broken neck and spinal cord shock resulting in quadriplegia.

John Welch and Kimberly Bauer were witnesses to the collision. Welch was a truck driver who was immediately behind Pottorff's semi at the time of the accident. Welch testified that he and Pottorff were traveling

between 45 and 50 miles per hour and passed five to ten cars before the collision. According to Welch, the pickup started sliding when Pottorff's front bumper was in between the camper shell and the cab of the pickup. Bauer was traveling on Interstate 35 at the time of the accident. She testified she was traveling between 30 and 35 miles per hour. She passed Wise's pickup in order to keep room between her cars and other cars. She estimated Wise's speed as less than 35 miles per hour. Bauer "saw Mr. Wise leave the far right lane to go into the inside lane. And in [her] rearview mirror and [her] side mirror, [she] saw a collision between a semi-truck that was behind Mr. Wise's truck. And [she] saw Mr. Wise's driver door pop open upon impact, and Mr. Wise was thrown from the truck."

Wise filed an action charging Pottorff with negligence in the Circuit Court of DeKalb County, Missouri, Pottorff's county of residence. In essence, Wise contended that Pottorff should not have been passing in the passing lane under such inclement weather conditions. Furthermore, with the aid of expert testimony, Wise contended that the aerodynamic wash from Pottorff's truck as he came upon Wise's rear quarter panel and fender created a wind, and a wash that caused Wise to lose control, spin out and ultimately collide with Pottorff's vehicle.

A jury trial commenced May 21, 1997. Under proposed instructions A and B, Wise sought to submit the basic theory that Pottorff was negligent either in attempting to pass plaintiff on the highway or in driving in close proximity to the plaintiff. Essentially, Wise argued that it should have been foreseeable to Pottorff that Wise's vehicle could go out of control and slide over into Pottorff's lane of travel. The trial court refused the proposed instructions and instead submitted Wise's case to the jury under Instruction No. 7. Instruction 7 submitted the factual proposition that Pottorff was negligent in attempting to pass Wise when it was not reasonably safe to do so and that such negligence caused or contributed to cause the loss of control of Wise's vehicle. On May 28, 1997 the jury returned a verdict finding zero fault on the part of both plaintiff and defendant. Plaintiff filed a motion for new trial on May 27 which the court denied on August 21.

I.

■ In his first point on appeal, Wise alleges that the trial court erred in refusing his proposed instruction "A" which would have submitted Pottorff's negligence in either (a) attempting to pass under conditions when it was not reasonably safe to do so or (b) in traveling in an adjacent lane so closely to Wise's car when it wasn't reasonably safe to do so. Plaintiff argues that the proposed instructions were a correct statement of the law that were supported by substantial evidence and it was error to refuse the instructions. As submitted to the jury, Instruction 7 read as follows:

> In your verdict you must assess a percentage of fault to defendants Paul Pottorff and Andrews Van Lines, Inc. (whether or not plaintiff was partly at fault) if you believe:
>
> First, defendant Pottorff attempted to pass plaintiff under conditions when it was not reasonably safe to do so,
>
> and
>
> Second, defendant Pottorff, was thereby negligent, and
>
> Third, such negligence directly caused or directly contributed to cause the loss of control of plaintiff's vehicle, thereby causing damage to plaintiff.
>
> In assessing such percentage of fault against defendants Pottorff and Andrews Van Lines, Inc., you must consider them both as one party and assess only the fault of Pottorff as the fault of both.

As evidenced by the above Instruction, the only difference between proposed Instruction A and Instruction 7 is the omittance of subsection (b) of proposed Instruction A, which submitted Pottorff's negligence in "traveling in an adjacent lane in close proximity to Wise's vehicle when it was not reasonably safe to do so."

■ Although the trial court seemed to say that the two factual situations were "at war" with each other, it would appear that the proposed bifurcated instructions were merely duplicative. As such, we hold that any error in refusing to submit proposed Instruction A was harmless error that does not warrant reversal. A judgment should be

reversed for instructional error only when the error materially affects the merits of the action. *Patton v. May Department Stores,* 762 S.W.2d 38 (Mo. banc 1988); *see also* Rule 84.13(b). Not submitting subsection (b) of proposed Instruction A simply does not materially affect the merits of appellant's case especially when the two factual situations in proposed instruction A were consistent with each other.

■■■ Wise's assertion that proposed Instruction A was "a correct statement of the law," also must fail under present Missouri law. Although Wise's injuries from the accident were extremely unfortunate, Missouri law does not require motorists like Pottorff to anticipate negligence on the part of a fellow motorist unless and until there is apparent danger of a collision. *Buck v. Union Elec. Co.,* 887 S.W.2d 430, 434–435 (Mo.App. E.D.1994). The respondent, in this case, had every right to assume that the appellant would stay in his own lane of travel. Missouri law does not require that Pottorff anticipate in advance that Wise would lose control of his vehicle and slide over into his (Pottorff's) lane. Even more unfortunate for the appellant is the fact that no authority in Missouri exists that limits or modifies a motorist's right to assume that a fellow motorist will remain in his own lane of travel—not even inclement weather conditions such as ice. "It is not negligence to fail to anticipate that another will be negligent for one is entitled to assume and act upon the assumption that others will exercise due care for their own safety, in the absence of notice to the contrary." *Id.* at 434.

■■ Missouri has placed a high standard of care upon operators of motor vehicles requiring that a person operating a motor vehicle use such care as would ordinarily be exercised by a very careful and prudent person under the same or similar circumstances. *Id.* at 435. In light of this standard, and the rule of the road that requires drivers to remain in his/her lane of travel, it would be unfair to require Pottorff to anticipate Wise's negligence in sliding over into Pottorff's lane of travel. Point denied.

## II.

■■ In his second point on appeal, Wise argues that the trial court erred in refusing proposed instruction "B" which stated that Pottorff was negligent in attempting to pass under conditions when it was not reasonably safe to do so. In essence, Wise argued that Pottorff was negligent in allowing his vehicle to come in close proximity to Wise's vehicle on ice instead of waiting another mile or two for dry pavement. This argument must fail.

As discussed above in point one, this court cannot find Pottorff negligent in failing to anticipate that Wise would slide into his lane of travel unless and until a collision was apparent. *Buck,* 887 S.W.2d at 434–435. It was reasonable for Pottorff to assume that Wise would remain in the outside lane of travel. Point denied.

## III.

■■ In his third point, Wise argues the trial court erred in admitting evidence of weather conditions relatively remote from the location of the accident. This evidence came in through the deposition testimony of Randall Ollis, an expert on meteorology called by the defendants. Apparently, there was no showing that strong winds caused the loss of control of plaintiff-appellant's vehicle. Appellant's failure to object does not preserve any error for review on appeal. *King v. Copp Trucking, Inc.,* 853 S.W.2d 304 (Mo. App.W.D.1993). In any event, even had the error been preserved, it would appear it was harmless under Rule 84.13(a). Point denied.

## IV.

■■■ The fourth point in this case questions whether the trial court correctly applied Kansas substantive law on comparative fault. The appellant argues that Missouri's law of pure comparative fault should have been applied. Kansas' law of comparative fault bars recovery if the plaintiff is 50% or more at fault for his injuries. This court applied Missouri's pure comparative fault system in *Hicks v. Graves Truck Lines, Inc.,* 707 S.W.2d 439 (Mo.App. W.D.1986). In *Hicks,* like in the case at hand, the accident occurred in Kansas. The *Hicks* court held that where Missouri and another state both have significant contacts with the facts, the choice of law should be made on the basis of which state has a greater interest in having

its law applied to the case. *Id.* at 445. The similarities to the two cases end there, however. In the case at hand, the only Missouri contact with the accident was the fact that one of the defendants, Pottorff, resided in DeKalb County. On the other hand, Kansas was the place of the accident, and Kansas was the state of residence of Wise. The *Hicks* court fashioned a test to determine whether significant Missouri interests would be impaired by using the Kansas comparative fault doctrine. *Id.*, at 444. The court opined that "significant Missouri interests are impaired if the Kansas modified comparative fault doctrine is applied to deny any ratable damage recovery to Missouri claimants who sue in Missouri courts. *Id.* Use of Kansas law was not in error. The jury's verdict found no fault as to the respondents, so any error in use of Kansas law as opposed to Missouri law, would be harmless. Point denied.

### V.

In his fifth and final point on appeal, appellant claims the trial court committed plain error in failing to grant a new trial for "the calculated misconduct of defense counsel in breaking the door button/handle and then retaining an expert to hypothesize, on the basis of the condition created by defense counsel after the accident, that the door was defective and broken prior to the accident combined with the court's erroneous application of Kansas law. . . . . " caused Wise severe prejudice. This scenario arose from a post-accident inspection of the door itself that occurred sometime in May and June of 1995. John Bentley, a defense expert in motor vehicle accident reconstruction, discovered that the door button latch on the damaged door was pushed and stayed in. From this observation, Bentley testified that the faulty door latch mechanism caused the door to open during the collision which resulted in Wise being thrown from the truck. Another accident expert concurred with Bentley's observations. Wise testified that nothing was wrong with the door handle prior to the accident. Wise's father testified that defense counsel pushed in the door handle during one of the post accident inspections. In defendant-respondent's closing argument, defense counsel specifically stated, "Now, I like Harvey Wise and I respect him. If he says I

pushed in the thumb button and it stayed in, I'm not going to challenge that. But I think if we push in the thumb button and forevermore be in that same position, what that tells us is there was something wrong with it before I ever pushed it in."

Appellant argues that the effect of defense counsel's closing argument was to completely change the comparative fault submission against the plaintiff minutes before the twelfth hour. This court does not agree. Any alleged error in the submission of comparative fault such as the door latch cannot be deemed plain error as a matter of law. "Where a jury, instructed as here by plaintiff's verdict director, finds no fault on the part of the defendant, an error in the comparative fault instruction is non-prejudicial as it is presumed the jury never reached the issue of plaintiff's fault. *Roberts v. Obremski,* 761 S.W.2d 291, 292 (Mo.App.E.D.1988). Point denied.

Judgment is affirmed.

All Concur.