NUMBER 13-00-164-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

__________________________________________________________________


PEDRO SALAZAR , Appellant,


v.


THE STATE OF TEXAS , Appellee.

__________________________________________________________________


On appeal from the 195th District Court

of Dallas County, Texas.

__________________________________________________________________


O P I N I O N

Before Justices Hinojosa, Rodriguez, and Hill (1)

Opinion by Justice Hill


Pedro Salazar appeals his conviction by a jury of the offense of murder. The jury assessed his punishment at thirty-five
years' confinement in the Texas Department of Criminal Justice, Institutional Division, and a fine of $10,000. The jury
found that Salazar used a deadly weapon in the commission of the offense. In seven points on appeal, Salazar contends
that: (1) the evidence is insufficient to prove that venue was proper in Dallas County; (2) the evidence is legally insufficient
to convict him of murder by strangulation; (3) the evidence is factually insufficient to convict him of murder by
strangulation; (4) the evidence is factually insufficient to convict him, as a principal, of murder by inflicting blunt force
trauma on the deceased; (5) the evidence is factually insufficient to convict him, as a party, of murder by inflicting blunt
force trauma; (6) the trial court erred by failing to sua sponte instruct the jury on the burden of proof for evidence of
extraneous offenses or bad acts admitted at punishment; and (7) the trial court abused its discretion by admitting a
videotape at the punishment phase depicting the life of the victim. We affirm. 

 Salazar contends in point one that the evidence is insufficient to prove that venue was proper in Dallas County. Evidence
was presented showing that the offense was committed in Denton County, while the body was found in Dallas County. 
Venue is proper in the county where the body of the victim is found. Edwards v. State, 427 S.W.2d 629, 636 (Tex. Crim.
App. 1968). We therefore conclude that the evidence is sufficient to show that venue was proper in Dallas County. 

 Salazar urges that venue was not proper because both the injury and death occurred in Denton County. He relies on the
language of article 13.07 of the Texas Code of Criminal Procedure, which provides that, "If a person receives an injury in
one county and dies in another by reason of such injury, the offender may be prosecuted in the county where the injury was
received or where the death occurred, or in the county where the dead body is found." Tex. Code Crim. Proc. ANN. art.
13.07 (Vernon 1977). Despite this statutory language, venue is proper in homicide cases in the county where the body is
found, even though the injury and death may not have occurred in two different counties. Edwards, 427 S.W.2d at 636;
Washburn v. State, 692 S.W.2d 576, 577 (Tex. App. -- Houston [1st Dist.] 1985, no pet.). We overrule point one.

 Salazar contends in points two, three, four, and five that the evidence is legally or factually insufficient to support his
conviction. In evaluating the legal sufficiency of the evidence, we view the evidence in the light most favorable to the
verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable
doubt. See Ovalle v. State, 13 S.W.3d 774, 777 (Tex. Crim. App. 2000). 

 When we review the factual sufficiency of the evidence in criminal cases, we view all the evidence in a neutral light and
set aside the verdict only if the proof of guilt is so obviously weak as to undermine confidence in the jury's determination or
the proof of guilt, adequate if taken alone, is greatly outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex.
Crim. App. 2000). Evidence presented at trial showed that Salazar confided in a friend that he had been offered money or
marijuana to kill someone. He later confided to the same friend that when David Powell and Jonathan, the victim, arrived
at Danny Diaz's house, he, Diaz, and Powell all started hitting Jonathan, and that he personally had hit Jonathan in the head
with a baseball bat. Salazar also told the friend that Powell had tried to strangle the victim with a wire, but that it was too
bloody and Powell's hands kept slipping. Subsequently, according to what Salazar told the friend, he stepped on Jonathan's
throat until he was not breathing anymore and there was no life in him. 

 Diaz testified that Salazar hit Jonathan with a baseball bat and that Powell hit him "real hard" with a bat. He said that
when Powell was stepping on Jonathan's neck he asked Salazar to come over and step on the neck and that Salazar did so.
According to Diaz, Salazar kept remarking on how Jonathan was still alive and that his tongue was blue and sticking out.

 A Dallas County medical examiner testified that in examining the deceased she found a fractured larynx and hyoid bone. 
She said that this would require a wide forceful pressure on the front of the neck. She also noted that there was extensive
hemorrhage in the musculature on the front of the neck. The medical examiner said that in stepping on someone's throat
like that, a foot would be considered a deadly weapon and could cause the death of that person. Although she expressed
her opinion that the victim's death was caused by blunt force head injuries, she testified that there was an element of
strangulation, which included the fracture and broad-based contusion suggesting a blunt object, and that this may have
contributed to Jonathan's death. We hold that the evidence is legally sufficient to support the conviction. 

 Salazar argues in point two that the evidence is legally insufficient to show that he murdered the victim by strangulation. 
His argument is based upon the medical examiner's primary conclusion that Jonathan's death was caused by blunt force
head injuries. We believe that based upon the evidence that we have outlined, the jury could reasonably have believed that
Jonathan died as a result of Salazar stepping on his throat until "he quit breathing and no life was left in him." We overrule
point two. Furthermore, we hold that the evidence is factually sufficient because the proof of guilt is not so obviously weak
as to undermine confidence in the jury's determination and the proof of guilt is not greatly outweighed by contrary proof. 

 Salazar urges in point three that the evidence is factually insufficient to convict him of murder by strangulation. He bases
his argument on the testimony of the medical examiner that we have already discussed, plus her expression that she could
not say beyond a shadow of a doubt that strangulation was a cause of the death. She said that it may have, but could not say
for certain. We do not accept Salazar's contention that any conclusion by the jury that Salazar murdered the victim by
strangulation was so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We overrule
point three.

 Salazar insists in points four and five that the evidence is factually insufficient to convict him, as either a principal or as a
party, of murder by inflicting blunt force trauma. Salazar relies on the fact that he testified at trial that he only hit the
victim on the arm with a baseball bat and did not intend to kill him. He further argues that Diaz's testimony should not
have been accepted by the jury because it was inconsistent with the statement that he gave police and he was high on
cocaine when he gave that statement. The jury are the sole judges of the credibility of the witnesses. Wesbrook v. State, 29
S.W.3d 103, 112 (Tex. Crim. App. 2000). We overrule points four and five.

 Salazar urges in point six that the trial court erred by failing to sua sponteinstruct the jury on the burden of proof for
evidence of extraneous offenses or bad acts admitted at punishment. While evidence of extraneous offenses or bad acts
was admitted at the punishment phase of Salazar's trial, the charge to the jury did not instruct the jury that in order to
consider those in determining Salazar's punishment they must find, beyond a reasonable doubt, that he committed them. 
Based uponHuizar v. State, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000), both the State and Salazar agree that the trial
court erred by not sua sponte giving such an instruction. Salazar neither requested such a charge nor objected to its
omission. We must therefore make a harm analysis as set forth in Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App.
1985) (op. on rehearing). Huizar, 12 S.W.3d at 484-85. We will consider the actual degree of harm suffered by Salazar in
light of the entire jury charge, the state of the evidence, including the contested issues and weight of the probative evidence,
the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. Almanza, 686
S.W.2d at 171. We will reverse only if the error was so egregious and created such harm that Salazar has suffered
egregious harm, that is that he has not had a fair and impartial trial. Id. 

 The evidence, as we have previously recounted it, shows the heinous nature of the murder and Salazar's involvement with
it. The evidence of extraneous bad acts consisted of evidence of very minor school infractions, including throwing rocks
from the school's roof. There was no evidence of any physical violence. In his argument at punishment, Salazar's attorney
characterized the testimony by saying, ". . . if you cut through all of it, you've got him at least accused of throwing a rock
from a bridge, and you've got him calling a teacher a bad name." Counsel then noted that there was no evidence of prior
assaultive behavior or evidence of harming or hurting other people. The maximum amount of punishment that could have
been assessed by the jury was life or not more than 99 years, with a fine of $10,000, while the minimum was five years
punishment, with the possibility of community supervision. As previously noted, the jury assessed Salazar's punishment at
thirty-five years' confinement in the Texas Department of Criminal Justice, Institutional Division, and a fine of $10,000.
Considering the record as a whole, we hold that Salazar did not suffer egregious harm as a result of the trial court's failure
to instruct the jury that they could not consider the extraneous offenses or bad acts unless they found beyond a reasonable
doubt that he committed those acts. We overrule point six. 

 Salazar argues in point seven that the trial court abused its discretion by admitting a videotape at the punishment stage of
the trial, a videotape that had been prepared for the victim's memorial service. The videotape consisted of nearly twenty
minutes of photographs of the victim and others, including a number of small children. The tape did not identify who the
other individuals in the pictures were. Some of the pictures included others without the victim present. The background
music included music from the movie "Titanic," some of it including lyrics relating to maintaining an ongoing relationship
with one lost through death. The music, including that portion with lyrics, is quite emotional, especially in view of the
popularity of the movie and the song played. When the tape was offered into evidence, Salazar's counsel pointed out to the
court that the videotape had not been produced in response to discovery and objected on that basis. Counsel requested time
to examine the videotape so as to make a proper objection, but the trial court denied counsel that opportunity.
Subsequently, counsel objected to the videotape, including an objection to its musical accompaniment, urging that the
admission of the videotape was "highly prejudicial and outweighs any probative value." Counsel also objected that
admission of the videotape violated rules 401, 402, 403, and 404 of the rules of evidence. 

 Admissibility of evidence at the punishment phase of a non-capital felony offense is a function of policy rather than
relevancy because there are no discrete factual issues at the punishment stage. Stavinoha v. State, 808 S.W.2d 76, 78 (Tex.
Crim. App. 1991). Subject to limitations imposed by article 37.07, §3(a), evidence of the circumstances of the offense
itself or the defendant himself will be admissible at the punishment phase. Id.; see Tex. Code Crim. Proc. 37.07, § 3(a). 
Victim impact evidence may be admissible as a circumstance of the offense so long as that evidence has some bearing on
the defendant's personal responsibility and moral guilt. Stavinoha, 808 S.W.2d at 78-9.

 The pictures show a loving relationship between the deceased and his family. As such, they present some evidence of the
loss suffered by the deceased's family due to his death. Evidence of the effect of the offense upon the victim's family has
been held to be admissible. Brooks v. State, 961 S.W.2d 396, 399 (Tex. App.-Houston [1st Dist.] 1997, no pet.). While the
probative value of the pictures as to that issue might be slight, we hold that evidence of the harm with respect to the
pictures alone is also slight. To the extent that any of the pictures were not members of the deceased's immediate family,
an argument could be made that such pictures would be irrelevant, but Salazar made no such argument either at the trial
court or in this appeal. We conclude that the admission of the pictures contained in the videotape was not error. 

 The State concedes that the emotional music included as part of the videotape was not relevant. We agree. We hold that
the trial court abused its discretion in allowing the introduction of the videotape that included such music. In a case such as
this involving a non-constitutional error, we must disregard the error if it does not affect the defendant's substantial rights. 
See Tex. R. App. P. 44.2(b). In interpreting this rule, we are instructed by the Texas Court of Criminal Appeals that we
must disregard the error if, after examining the record as a whole, we have fair assurance that the error did not influence the
jury, or had but a slight effect. Reese v. State, 33 S.W.3d 238, 243 (Tex. Crim. App. 2000) (citing Johnson v. State, 987
S.W.2d 410, 417 [Tex. Crim. App. 1998]). 

 We have already set forth the violent nature of the offense Salazar committed and his participation in it. At the
punishment phase, no prior convictions were shown. The only bad acts shown were numerous minor school infractions. 
The only one of those involving violence was Salazar's throwing rocks off the roof of the school. No one was injured on
that occasion. The deceased's mother testified that no words could express their loss, then said that the deceased was dearly
loved and that the family's hearts were broken. The deceased's father said that there were no words to express what it was
like. Salazar's mother testified that he was a good child, that he belonged to no gangs. She urged the jury not to send him
to the penitentiary. Numerous witnesses testified that they knew Salazar and generally testified that they knew him as
someone who conducted himself in an appropriate manner. 

 The State waived its opening argument at the punishment stage. Defense counsel began argument by referring to the
videotape and the effect that it would have on the jury. The State stated in its argument, referring to the deceased, that,
"You've seen the photographs, the friends, he was a good kid." The State somewhat indirectly requested the jury to return a
life sentence for Salazar based upon the heinous nature of the crime and the fact that Salazar had not known the victim. 

 The jury was instructed that the range of punishment was imprisonment for life or for not more than 99 years or less than
five years, plus a $10,000 fine could be imposed. The jury also received an instruction that it could recommend community
supervision. As previously noted, the jury assessed Salazar's punishment at thirty-five years' imprisonment and a fine of
$10,000. 

 Taking into consideration all of the record, we have fair assurance that the error did not influence the jury, or had but a
slight effect. Accordingly, we overrule point seven. 

 The judgment is affirmed. 

______________________________

JOHN HILL,

Senior Justice



Do not publish .

Tex. R. App. P. 47.3(b).



Opinion delivered and filed

this 4th day of October, 2001.

 

1. Senior Justice John Hill assigned to this court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't
Code Ann. § 74.003 (Vernon 1998).